SMEDLEY *v.* STATE.

Opinion delivered July 2, 1917.

1. TRIAL—CONTINUANCE—DILIGENCE.—Appellant *held* to have failed to exercise due diligence to procure the attendance of a witness, and that therefore the trial court did not abuse its discretion in refusing to grant a continuance.

2. SEDUCTION—PROOF THAT DEFENDANT WAS UNMARRIED.—In an indictment charging seduction, an allegation that defendant was an unmarried man is surplusage, and proof that he was unmarried is not necessary to conviction.

3. SEDUCTION—PROOF THAT PROSECUTING WITNESS WAS UNMARRIED.—In a prosecution for seduction, *held,* the evidence showed that the prosecuting witness was unmarried.

4. SEDUCTION—CORROBORATION.—On a charge of seduction corroboration of the female is required both as to the promise of marriage and the act of sexual intercourse.

5. SEDUCTION—CORROBORATION.—In a prosecution for seduction, appellant contended that the prosecuting witness was not corroborated. Appellant was asked how many times he had had intercourse with her, and replied "I never tried to keep up with them." *Held*, this was sufficient corroboration of the act of intercourse.

6. SEDUCTION—CONFESSION OF GUILT.—Evidence of a confession of guilt by the defendant, *held*, competent.

7. EVIDENCE—SEDUCTION—CROSS-EXAMINATION.—In a prosecution for seduction, it was proper for the prosecuting attorney, on cross-examination, to ask the appellant if he had not been tried before for seducing another girl, on the issue of appellant's credibility as a witness.

8. SEDUCTION—HEARSAY EVIDENCE—SIMILAR ACT WITH OTHER MEN.— In a prosecution for seduction testimony by one W. that one M. told him (W.) that he (M.) had been intimate with the prosecuting witness, is incompetent.

9. APPEAL AND ERROR—INSTRUCTION—CURE OF ERROR.—An instruction, although faultily worded, is not prejudicial, where the court followed it with a correct instruction on the same issue.

10. SEDUCTION—MOTIVE OF FEMALE—INSTRUCTION.—Prayer for an instruction that if the prosecutrix consented to sexual intercourse either through passion or curiosity, even though there had been a promise of marriage, that defendant would not be guilty, was properly refused.

Appeal from Pike Circuit Court; *Jefferson T. Cowling*, Judge; affirmed.

*W. S. Coblentz* and *W. T. Kidd*, for appellant.

1. The motion for continuance should have been granted. The testimony was material and due diligence shown. 55 S. W. 204; 42 Ark. 273; 60 *Id*: 564.

2. The indictment alleged that defendant and the prosecutrix were both unmarried. There is not a syllable of proof that either of them were single. The burden was on the State to prove the allegation. 35 Cyc. 1345; 93 Cal. 74; 108 Mo. 658; 1 Wis. 209; 114 Ark. 310; 8 R. C. L. 219.

3. There was no corroboration of the prosecutrix, unless it be certain admissions of defendant. The admissions or confessions, if made, were not voluntary nor free from improper influences. 74 Ark. 397; 1 R. C. L. 559; 66

Ark. 53; 28 *Id.* 121; 50 *Id.* 501; 47 *Id.* 172; 22 *Id.* 336; 50 *Id.* 305; 66 *Id.* 506. See also 1 R. C. L. 584.

4. Proof of other crimes was not admissible. Jones on Ev., § 143. The question as to whether defendant had not been compelled to leave Pike County for seducing another girl was improper and prejudicial. 39 Ark. 278; 73 *Id.* 262; 72 *Id.* 586; 91 *Id.* 555.

5. Under peculiar circumstances affording a presumption of truth hearsay evidence is admissible. 12 Ark. 782; 1 R. C. L. 575.

6. The statute provides that the promise must be *express*. It was error to give the first instruction without this word. Kirby's Dig., § 2043. The peremptory instruction asked by defendant should have been given, as there was no proof that either defendant or prosecutrix were unmarried. 35 Cyc. 1345.

7. If prosecutrix consented through curiosity or passion, then no crime was proven. 35 Cyc. 1333; 79 Ala. 14; 112 Ga. 871; 132 Mich. 58. Passion, instead of the promise, may have been the inducing cause.

8. The trial was not in accord with well-established rules of law. 116 U. S. 616.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1. The continuance was properly refused for want of due diligence. The matter was within the sound discretion of the court below. The burden to show abuse of discretion was upon appellant. 79 Ark. 594; 82 *Id.* 203; 91 *Id.* 497; 94 *Id.* 169; 103 *Id.* 352; 100 *Id.* 132; 78 *Id.* 36; 92 *Id.* 28.

2. It was not necessary to prove that defendant was unmarried. Kirby's Digest, § 2043; 95 Ark. 555; 98 Mo. 368; 16 So. 264; 69 Ark. 322; 73 *Id.* 139; 77 *Id.* 23; 84 *Id.* 67. Whether a person is married or unmarried may be proved by circumstantial evidence. 95 Ark. 555; 92 *Id.* 421; 66 Minn. 327; 52 N. J. L. 207; 8 Kan. 220.

3. The testimony of the prosecutrix was corroborated by defendant's own testimony. 84 Ark. 67; 92. *Id.* 421.

4. The confessions or admissions were not made under duress. Whether voluntary or not was a matter addressed to the sound discretion of the court below. 72 Ark. 145.

5. The question as to whether he left Pike County once before for seducing a girl was on cross-examination and merely affected his credibility as a witness. 100 Ark. 324; 74 *Id.* 397; 44 *Id.* 122, 141; 8 N. D. 548, etc.

6. The testimony of Westfall as to what Hamilton told was hearsay purely, and inadmissible.

7. No specific objection was made to the first instruction because it omitted the word "express." 95 Ark. 100; 73 *Id.* 315; *Teel* v. *State,* 129 Ark. 182. But if error, it was cured by No. 4 given by appellant. 17 Ark. 292.

8. There was no error in refusing No. 5 asked by appellant. It is ambiguous. There was no testimony as to "curiosity" or passion. Besides, it was covered by other instructions given. Trial courts are not required to duplicate instructions.

WOOD, J. Appellant was indicted at the March term, 1917, of the Pike Circuit Court for the crime of seduction, the indictment charging that Will Smedley, "on the 1st day of April, 1916, being a single and unmarried man, did unlawfully and feloniously obtain carnal knowledge of one Rosa Jackson, a single and unmarried female, by false expressed promise of marriage," etc.

I. The indictment was returned on the 21st of March. Appellant was arrested on that day. The case was called for trial on March 26. Appellant moved for a continuance, setting up that one Mike Hamilton was a material witness in his behalf; that he resided within four or five miles of Murfreesboro, in Pike County; that he had a subpoena issued for him on the morning of the 24th of March, 1917; that he was temporarily absent, but

would return in a short time to his home; that if present
he would testify that he had had sexual intercourse with
Rosa Jackson two times in January, one time in Febru-
ary and three times in March, of the year 1916, and a
number of times since that date. The motion was in due
form. The court overruled the motion, and this ruling is
made one of the grounds of the motion for a new trial.

(1) The motion discovers that the absent witness
lived within four or five miles of the courthouse. Three
days elapsed after the warrant was served on appellant
before he asked for a subpoena for this witness. While
the motion discloses that he was temporarily away, it
does not show that the witness was beyond the jurisdic-
tion of the court. The burden was upon appellant to show
that he had exercised due diligence, and the showing is
not sufficient, at least to convince us, that the trial court
abused its discretion, that is, that he acted arbitrarily or
capriciously, upon the showing made, in overruling ap-
pellant's motion. *Lofton et al.* v. *State, Use, etc.,* 41 Ark.
153, 155; *Jackson* v. *State,* 94 Ark. 169; *Morris* v. *State,*
103 Ark. 352; *Stripling* v. *State,* 100 Ark. 132.

II. Counsel for appellant next contend that, inas-
much as the indictment alleged that the appellant was a
single and unmarried man, and that the prosecutrix, Rosa
Jackson, was a single and unmarried female, and that in-
asmuch as the statute is leveled at the crime of obtaining
carnal knowledge of a female by virtue of any feigned
expressed promise of marriage, that to sustain the
charge it was necessary for the State to prove that the
man and the woman involved were single persons, and
that there was no such proof.

(2) The statute provides: ''Any person who shall
be convicted of obtaining carnal knowledge of any female
by virtue of any feigned or pretended marriage, or of any
false or feigned expressed promise of marriage, shall,
on conviction,'' etc. Kirby's Digest, § 2043. ''The stat-
ute,'' says this court in *Davis* v. *State,* 95 Ark. 555, 557,
''is leveled at the seducer, whether he be a married man
or a single man. It was not necessary, therefore, that the

indictment should allege that the defendant was a single,
and unmarried man.'' Such an allegation is in no man-
ner descriptive of the offense, and it therefore may be
treated as surplusage, and proof that the alleged seducer
was unmarried was not essential to conviction.

(3) Conceding, without deciding, that it was essen-
tial for the State to prove that the female was unmarried,
there is ample testimony in the record to warrant the
conclusion that the prosecutrix was unmarried. The
prosecutrix, at the time of the alleged intercourse, was
but a little over sixteen years of age, and she is referred
to by appellant's counsel, throughout her examination as
a witness, as ''Miss Rosa.'' The testimony of the prose-
cutrix tends to show that her intercourse with the appel-
lant was the first act of the kind. The prosecutrix speaks
of the appellant's promise to marry her, and her whole
testimony is predicated upon the idea that she was not
a married person.

The mother of the prosecutrix testified concerning
the association of appellant with the prosecutrix for
nearly a year, visiting her every Sunday. One of the
witnesses spoke of the young people associating together,
including ''Miss Rosa.'' And there are references in the
testimony to appellant's promising to and obtaining a
license to marry the prosecutrix.

From all the circumstances the jury were warranted
in finding that the prosecutrix was an unmarried person.
Whether or not she was married could be proved by cir-
cumstances. *Nichols* v. *State,* 92 Ark. 421; *Davis* v.
*State,* 95 Ark. 555.

III. The prosecutrix testified that she met Will
Smedley in January, 1916, and began having intercourse
with him about May, 1916. He promised that if she would
have intercourse with him that he would marry her. She
did not at first consent, but the next time he visited her,
about two weeks after the promise, she yielded and the
act of intercourse took place.

(4) On a charge of seduction, corroboration of the
female is required both as to the promise of marriage and

the act of sexual intercourse. Kirby's Digest, § 2043; *Cook* v. *State*, 102 Ark. 363; *Nichols* v. *State*, 92 Ark. 421, and cases cited.

(5) Appellant contends that there was no corroboration. The appellant, when asked how many times he had intercourse with Rosa Jackson in 1916, replied: "I never tried to keep up with them." This was sufficient corroboration of the act of intercourse. *Wilhite* v. *State*, 84 Ark. 67. Appellant testified that he began going with the prosecutrix in February, 1916, and had kept her company at different times throughout the year. The mother of the prosecutrix testified that appellant kept the company of the prosecutrix every Sunday from February 5 until December 28, 1916. One of the prosecutrix's relatives testified to the same effect, and also that he had not seen any other boys keeping her company during that time. The prosecutrix's mother also testified that when she told appellant that he had ruined her daughter through a contract of marriage that appellant replied: "You are mistaken; I know I did; I am going to take her." Witness replied: "Now is the time." Appellant turned and came to the clerk's office and got his license right along with the witness.

Another witness testified that he asked appellant if he promised to marry the girl and appellant answered, "Yes." This witness further testified that when Mrs. Hathcock, the mother of the prosecutrix, in his presence, was demanding that appellant should marry the prosecutrix the appellant said, "That is what I have been aiming to do."

This testimony was sufficient corroboration of the prosecutrix of the promise of marriage.

IV. But the appellant contends that the above testimony, tending to show the admissions of appellant as to the sexual intercourse and promise of marriage, was obtained under duress, and that the court erred in overruling appellant's motion to exclude the same.

(6) It was elicited on cross-examination of the mother of the prosecutrix that on the occasion when she

met appellant and when she was going with him to the clerk's office for the purpose of getting a license that she had a pistol in her satchel and had armed herself with the pistol with the intention of looking for Smedley. She stated that her husband, while they were on the way, had called the constable, and that they all walked on together. She brought the pistol because she didn't know what she might need it for. He didn't know anything about her having the pistol.

The constable testified that he heard Mrs. Hathcock, on that occasion, say to Smedley, "You know what you have got to do." Smedley replied, "No." She said, "You have got to go to the courthouse and get your license and marry my girl," and Smedley replied, "I am not ready, I have got to have some more clothes," and she said, "Your clothing is better than the shape you left my daughter in, and you have got to go and get your license and marry the girl." He replied, "I have been aiming to do that." The appellant was not under arrest.

The appellant himself testified that on that occasion he told Mrs. Hathcock that if he had to marry the girl he guessed he could do so, because "she said I had to or take the consequences." He expected her to use the gun she had. He did not see the gun but knew she had one as he had seen one down at the house. He was not scared when she opened the purse, and did not go to the court-house scared.

Conceding that the above testimony tended to show conduct on the part of the appellant in the nature of a confession of guilt, the court nevertheless, under this testimony, did not err in holding that what appellant said and did was free and voluntary. The competency of the evidence was primarily for the court to determine, and his finding on the issue has substantial evidence to sustain it. We can not say that the court erred in admitting the evidence. Its weight was for the jury. *McLemore* v. *State,* 111 Ark. 457; *Brewer* v. *State,* 72 Ark. 145.

(7) V. On cross-examination the prosecuting attorney, over the objection of appellant, asked appellant

the following questions: "Isn't it a fact that you left Pike County before this for seducing another girl? Isn't it a fact you did seduce another young lady in Pike County and it hung in the courts until it was worn out and during the principal part of the time you were a fugitive from Pike County;" and similar questions. These questions were proper, on cross-examination, as affecting the appellant's credibility as a witness. *Younger* v. *State,* 100 Ark. 324.

(8)    VI.    The court refused to permit witness J. A. Westfall, on the part of the appellant, to testify that Mike Hamilton told him that he was in trouble with the prosecutrix and had been intimate with her. Such testimony was pure hearsay and incompetent.

(9)    VII.    Appellant urges that the cause should be reversed because the court told the jury that if they found beyond a reasonable doubt that appellant obtained carnal knowledge of the prosecutrix by reason of a false promise of marriage, etc., they should convict. Appellant contends that the instruction should have used the words "false express promise of marriage."

No specific objection was made to the instruction on account of the omission of the word *express.* *Teel* v. *State,* 129 Ark. 182, and cases there cited. Besides, if it was error to omit this word, the error was cured because the court granted appellant's prayer for instruction in which the jury were told that unless the prosecutrix is corroborated "both as to the act of intercourse and the express promise of marriage, if any, your verdict must be for the defendant." There was no conflict in the instructions.

(10)    VIII.    The court refused to grant appellant's prayer for instruction telling the jury, in effect, that if the prosecutrix consented to sexual intercourse, either through passion or curiosity, even though there had been a promise of marriage, their verdict should be for the defendant.

In *Taylor* v. *State,* 113 Ark. 520, 527, we said: "But this statute can only be invoked by the female who to the

very time of her fall had held her virtue, so to speak, as 'the immediate jewel of her soul,' and who was only induced to surrender it through the promise of the man whom she trusted to marry her and solely from a desire to have him keep that promise. The woman who yields her virtue for sexual pleasure and uses the promise of marriage only as a cloak or subterfuge to hide her disgrace is not within the pale of the protection of this particular statute.''

''Curiosity'' is defined as ''Eager concern to get knowledge of, or a wish to engage the mind with, anything novel, odd, strange or mysterious.'' Funk & Wagnall's New Standard Dictionary.

While it is generally supposed, at least among men, that the gentler sex are possessed of almost boundless curiosity, yet it has not hitherto been conceived or suggested by any author on criminal law, so far as the writer is aware, that a woman might be prompted to yield her maidenhood and sacrifice her virtue out of mere curiosity. Certainly, therefore, no such issue should be submitted to a jury to determine unless there was some evidence to justify it. In this case there was none, and the instruction in this particular was wholly abstract and well calculated to lead the jury into the realm of speculation as to the motive that prompted this young girl to surrender her virtue to the man she loved, when, according to her testimony, there was only one motive, towit, the express promise of marriage.

There is no error in the record, and the judgment must therefore be affirmed.