## PEARROW v. STATE.

### Opinion delivered November 22, 1920.

1. WITNESSES — CROSS-EXAMINATION AS TO COLLATERAL MATTERS.— Where one accused of burglary takes the stand as witness, it was proper to permit the State to cross-examine him about other crimes which he had committed, for the purpose of testing his credibility.

2. CRIMINAL LAW — CONFESSIONS — ADMISSIBILITY.—Findings of the trial court that certain confessions of the defendant were not obtained by threats or promise of reward *held* sustained by the evidence.

3. WITNESSES—ADMISSIONS PROCURED BY THREATS.—Affidavits as to his participation in similar crimes committed a short time previously, procured from accused by threats, should not be allowed to go to the jury, even to test his credibility.

4. CRIMINAL LAW — ADMISSIONS — VOLUNTARY CHARACTER.—Where there was testimony tending to show that certain affidavits made by accused were procured by threats, though the court found, before admitting such affidavits, that they were voluntarily made, it was error to refuse to instruct the jury that such statements were not admissible unless freely and voluntarily made.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; reversed.

### STATEMENT OF FACTS.

Clyde Pearrow was indicted for the crime of burglary and grand larceny charged to have been committed by breaking into some box cars owned by the Missouri Pacific Railroad Company, and taking therefrom some dress goods, window shades and cigarettes.

Lotis Lockaby was a witness for the State. According to his testimony, Clyde Pearrow, Clark Pearrow, Monroe Price and himself broke into a box car belonging to the Missouri Pacific Railroad Company on its right-of-way near the town of Bald Knob in White County, Arkansas, at about two o'clock at night on the 27th day of December, 1919. They each took four cases of Camel Cigarettes from one box car. They broke into another box car the same night and got eight bolts of dress goods and some window shades. Lockaby sold his cigarettes for $8 a thousand. There are ten thousand cigarettes to the case. He did not know what the defendant did with his part of the cigarettes. Lockaby made a statement to the special agents of the railroad company, in the office of its local attorney in Bald Knob, about the burglary. He was arrested and stayed in jail two nights before he made bond.

Subsequently, at the instance of the defendant and some of his relatives, Lockaby made another written statement under oath in which he stated that the first statement made at the instance of the representatives of the railroad company was obtained by threats and by promises to turn him loose if he would make a statement implicating the defendant and others in the box car burglary. Lockaby stated on the stand that this latter statement made by him was not true, and that he made it to please the defendant and his friends, because they had insisted on him making it.

Another witness for the State testified that the defendant offered to sell him some Camel cigarettes at $5

per thousand soon after the burglary of the box car occurred. He did sell cigarettes to other persons who were in the witness' place of business.

According to the testimony of Ed Burford, he took a trunk full of cigarettes to Little Rock for the defendant soon after the burglary occurred.

Two other witnesses testified that the defendant sold them Camel cigarettes soon after the burglary occurred. One of them stated that the defendant gave him a quantity of cigarettes to sell for him.

The defendant was a witness for himself, and denied that he had anything whatever to do with taking any goods from the box cars of the Missouri Pacific Railroad Company. He denied that he offered cigarettes for sale soon after the burglary occurred. The defendant also testified that the special agents of the railroad company arrested him and carried him to the office of its local attorney in the town of Bald Knob; that they cursed him and threatened in every way to induce him to make a confession that would implicate himself and others in taking the goods from the box cars.

On cross-examination, the defendant admitted that he had signed several statements relative to the alleged burglary, but said that the statements were never read over to him, and that he did not know what was in them; that they were made at the office of the local attorney of the railroad company at the time, and he was threatened to be put in a sweat box if he did not make a confession of the alleged burglary.

Other witnesses for the defendant corroborated his testimony and further stated that he was on the train on his way to Memphis on the night the burglary was committed.

In rebuttal, it was shown by the State that no threats were made against the defendant and the witness Lockaby and others to induce them to make a confession of the burglary, nor was any hope of escape from punishment held out to them as an inducement to confess the crime.

In rebuttal, the State also introduced in evidence several affidavits signed and sworn to by the defendant in which he admitted that he, together with Lotis Lockaby and Bud Sims, broke into a box car of the railroad company at Bald Knob and took out some bolts of domestic, meat and tobacco and carried them home.

In another sworn statement he said that he merely went with Sims and Lockaby and helped them carry away some meat, lard and other goods which they told him they had taken from a box car of the railroad company. In still another affidavit the defendant admitted that he carried some bolts of domestic away which Lockaby and another person had taken from a car in the yards of a railroad company at Bald Knob.

The jury returned a verdict of guilty of grand larceny against the defendant and fixed his punishment at one year in the penitentiary. From the judgment of conviction, he has duly prosecuted an appeal to this court.

*Brundidge & Neelly* and *G. G. McKay,* for appellant.

1. The court erred in admitting as evidence the affidavits of defendant to the effect that he and other persons had broken into the box car and taken the goods; this was improper as a confession. These statements were not admissible, as they were statements relative to other offenses and not connected with the case at bar. 114 Ark. 481; 107 *Id.* 568; 66 *Id.* 53; 18 L. R. A. (N. S.) 768-791-9; 115 Ark. 390. See, also, 17 Ann. Cases 868; 3 *Id.* 893.

2. The evidence of Jake Smith as to how defendant was treated by the special agents of the railroad company, was competent, and it was error to refuse the testimony.

3. It was error to refuse to permit defendant to testify as to the conduct of State's attorney in the grand jury room.

4. Instruction 6, asked by defendant, was improperly refused. 114 Ark. 472; 17 Ann. Cases 868; 3 *Id.*

893. No. 10 should have been given. 130 Ark. 347; 109 *Id.* 332; 74 *Id.* 397; 1 R. C. L. 572.

*John D. Arbuckle,* Attorney General, and *Silas W. Rogers,* Assistant, for appellee.

1. The affidavits were admissible in evidence. 3 Enc. of Ev. 774; 217 S. W. 788; 132 Ark. 531; 133 *Id.* 264; 136 *Id.* 473.

2. What we have stated, *supra,* is applicable also as to the evidence of Jake Smith.

3. What happened in the grand jury room was privileged, as the indictment itself is not even a presumption of defendant's guilt. 122 Ark. 197.

4. The instructions are correct, and stated the law, and there is no error.

HART, J. (after stating the facts). It is earnestly contended by counsel for the defendant that the judgment should be reversed because the trial court admitted in evidence the affidavits of the defendant to the effect that he and other persons had broken into box cars belonging to the railroad company and had taken therefrom goods at other times than that charged in the indictment. Counsel contends that the defendant's connection with these crimes had nothing whatever to do with the crime for which he was being tried, and that its admission as evidence in the case at bar constituted error calling for a reversal of the judgment.

The defendant's declaration that he participated in other similar crimes about the time the crime in question was charged to have been committed was not admitted in evidence by the court to establish the guilt of the defendant in the present case. The affidavits were only admitted in evidence for the purpose of affecting the credibility of the defendant. They related to similar crimes which had been committed at Bald Knob along about the time the crime charged in the indictment was shown to have been committed. The defendant took the stand in his own behalf, and when he does so he is subject to the same rules of evidence and impeachment as

any other witness. To test his credibility, the State had the right on cross-examination to ask him about other crimes which he had committed about the same time and shortly before that time.

It is well settled in this State that a witness may be cross-examined, not only upon the facts involved in the issue, but also upon such collateral matters as may enable the jury to appreciate their fairness and reliability. To accomplish this purpose large latitude has been allowed in cross-examining the witness in collateral matters to enable the jury to comprehend just what sort of a person they are called upon to believe. *Hollingsworth* v. *State,* 53 Ark. 387; *Younger* v. *State,* 100 Ark. 321 and cases cited, and *Jordan* v. *State,* 141 Ark. 504.

Again, it is insisted that the alleged confessions contained in these affidavits were improper because they were obtained by threats from the defendant. The State introduced testimony tending to show that these affidavits of the defendant were not secured by threats, and the finding of the trial court in this regard will not be disturbed on appeal. *Dewein* v. *State,* 114 Ark. 472.

It is next insisted that the court erred in refusing to give instruction No. 6 asked by the defendant, which is as follows: "The jury are instructed that, before any admission or statements made by the defendant can be used against him as evidence, such statements or admissions must have been freely and voluntarily made, and where such statements, if any, are induced by threats of harm, promises of favor, a show of violence or inquisitorial methods are used to extort a confession, then the same is attributed to such influence and can not be used against the defendant."

The Attorney General admits that this instruction is correct in form, but he insists that there was no error in refusing it because it was not a confession of the crime for which the appellant was indicted and convicted. We do not think this makes any difference. The affidavits of the defendants were introduced to affect his credibility as a witness, and if, after he was arrested

for the crime charged in the indictment, he was forced to admit his participation in similar crimes committed a short time before the crime charged in the indictment, such declaration of his guilt of other crimes, if obtained by threats, should not be allowed to go to the jury, even to test the credibility of the defendant who had become a witness for himself. One reason for the exclusion of a confession obtained by threats is that it is a maxim that no one ought to be compelled to accuse himself. Another ground for excluding confessions induced by threats, or by hope of reward, has been called "the fox hunter's reason." This proceeds not only upon the ground that testimony obtained under such circumstances is unreliable, but upon a spirit of fairness to the accused. *Dewein* v. *State,* 114 Ark. 472, and cases cited.

While the declaration of the defendant to the effect that he had participated in similar crimes a short time before the crime charged in the indictment was committed does not constitute a confession of the crime charged in the indictment, still the statements contained in the affidavits of the defendant to the effect that he had committed similar crimes at about the same time affected his credibility as a witness, and therefore should not have been admitted in evidence by the court in rebuttal unless they were voluntarily made. In other words, if the defendant was induced to make the affidavits by threats or by promises of release from the crime charged in the indictment, they were inadmissible even in rebuttal as affecting his credibility, for the same reason that a confession of the crime charged in the indictment under such circumstances would be inadmissible. In each instance the witness would be compelled by threats to give evidence against himself.

The court in admitting the affidavits found that they were voluntarily made and its finding in this regard has evidence legally sufficient to support it and can not be disturbed on appeal. The jury were the judges of the weight to be given to this testimony after it was admitted by the court. The defendant was entitled to an

instruction on this point. The one asked by him was correct and it was error to refuse to give it because the point was not covered in any of the instructions given by the court. The refusal of the court to give the instruction constituted prejudicial error, and for that error the judgment must be reversed and the cause remanded for a new trial.