CANADA *v.* STATE.

Opinion delivered June 22, 1925.

1. INTOXICATING LIQUORS—WEIGHT AND SUFFICIENCY OF EVIDENCE.— As the weight and sufficiency of evidence is for the jury, testimony of one witness who positively identified appellant as the man from whom he purchased a pint of whiskey is sufficient to support a conviction of selling whiskey.

2. INTOXICATING LIQUORS—UNLAWFUL SALE—EVIDENCE.—In a prosecution for selling whiskey, testimony of witnesses that they found mash and what they termed "a common country still" on or near defendant's premises was admissible as tending to show that defendant was engaged in the whiskey business.

3. WITNESSES—IMPEACHMENT OF ACCUSED ON CROSS-EXAMINATION.— It was not error to permit the State on cross-examination to ask the accused whether he had ever been convicted of any offense.

Appeal from Sebastian Circuit Court, Greenwood District; *John E. Tatum,* Judge; affirmed.

*R. A. Rowe,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

WOOD, J. The appellant was indicted for the crime of selling intoxicating liquor. He was tried and convicted and sentenced by judgment of the court to imprisonment in the State Penitentiary for a period of one year, from which judgment he prosecutes this appeal.

Earl Bolin, a witness for the State, testified in August, 1924, he bought some liquor. Three boys went out in a Ford car in daylight across the first bridge out of town to get some whiskey. As they got across the

bridge, Harry Adams, one of the boys in the car, got out, and witness and Satterfield drove on up the road and turned around. Adams went and got some whiskey. He didn't have anything to put it in and went back to get a jar. They all got out, and witness and the other drank the whiskey. Witness could not say for certain who had it, but they drank it, and it was whiskey. On cross-examination witness stated that he could not say from whom they got it.

Bruce Satterfield, a witness for the State, testified that he knew Adams and Bolin. Witness and Bolin on the night of August 12, 1924, got some whiskey in the Greenwood District of Sebastian County, Arkansas. Adams, Bolin, and witness went to get the whiskey. It was supposed to be Tom Canada they got it from. They bought a pint and paid $2 for it. Harry Adams bought a pint also and paid the same price. Witness asked Harry Adams where to get it, and Harry told witness. Witness didn't know where to stop, but Adams did. When witness stopped, Adams went up to the depot and got a pint jar. The man who sold the whiskey was across the first bridge at the Midland Valley Depot. Witness was there in the presence of the man who sold the whiskey. At this point, the following are the questions propounded to witness and his answers thereto:

"Q. Is that the man that sold you the liquor (indicating the defendant)? A. He resembles the man that sold me the the liquor. Q. I ask you if that is the man that sold you the liquor (indicating defendant again)? A. Yes, sir. On cross-examination, the following are questions propounded to the witness and his answers thereto: "Q. You could be mistaken about whom you got it from, could you not? A. Well, I could be. Q. But you say this defendant is the man that sold you the whiskey? A. Yes, sir."

Alfred Stewart, a witness for the State, testified that he was a deputy sheriff. He searched the residence of Tom Canada in August, 1924, and, over the objection of

appellant, was permitted to state that they arrested the appellant on the morning of August 13th, and on that evening witness went back out there and brought in two galvanized wash tubs, which witness testified was an outfit which was a "common country still." Witness found it about 200 or 250 yards north and a little west of Canada's house. Witness followed a trail north and found the outfit he designated as a "common country still" on a branch a little west of the trail. The top tub was over a mash barrel. They poured out part of the mash into the tub. Witness exhibited to the jury a sample of the mash and stated that the barrel had from 12 to 18 inches of mash in it. As a peace officer, witness had had occasion to examine whiskey and mash, and this whiskey and mash had been run. At that time the defendant was living on Henry Norwood's place in the Greenwood District of Sebastian County, Arkansas. On cross-examination witness stated that he didn't see any of the stuff in the possession of the defendant. He didn't know who put the mash there, or who the tubs belonged to.

Henry Norwood testified for the defendant that he rented to the defendant the house and the little surroundings where he was living at the time of the occurrence mentioned in the testimony of witnesses for the State. Canada at that time was making ties for the railroad.

Henry Canada, a brother of the defendant, testified that the defendant at the time of the alleged offense was engaged in making ties. He was a cripple, and received $1 a week for his work which he spent for groceries. Robert Canada, son of Henry Canada and nephew of defendant, also testified to the same effect, and that he never saw a barrel of mash or chops around the defendant's premises or any outfit of any kind for making liquor. Other testimony by two of defendant's children was to the same effect.

The defendant, in his testimony, denied that he had sold liquor to Harry Adams and Bruce Satterfield. He

denied that the tubs exhibited to the jury as a "common country still" were his tubs. He had never seen them. He also stated that he had never had any mash. He made his living making ties. He was afflicted with bone erysipelas, and was a cripple, and could not walk without pain. On cross-examination, over the objection of the appellant, witness was asked if he had ever been convicted of anything, and answered that he pleaded guilty four years previous at Fort Smith in the Federal Court to the crime of having possession of and manufacturing whiskey. He had never been convicted of any thing else. Witness admitted that he was in town on the particular day designated up to eight or nine o'clock when he left to go home in a wagon.

1. Only one witness positively identified the appellant as the man from whom he purchased a pint of whiskey, but that was sufficient to warrant the verdict. The weight of the evidence and credibility of witnesses is for the jury. *Cox* v. *State,* 160 Ark. 283; *Nelson* v. *State,* 139 Ark. 13.

2. The court did not err in permitting the witnesses to testify that they found mash and what they termed a "common country still" on or near the premises of appellant. These were circumstances which the jury had a right to consider as they tended to show that appellant was engaged in the whiskey business and that he sold liquor as charged in the indictment. *Marsh* v. *State,* 146 Ark. 77; *Robertson* v. *State,* 148 Ark. 585.

3. The court did not err in permitting the prosecuting attorney to ask the appellant on cross-examination whether or not he had ever before been convicted of anything. The question was relevant as affecting the credibility of appellant as a witness. *Connor* v. *State,* 132 Ark. 531; *Shinn* v. *State,* 150 Ark. 215; *Bullen* v. *State,* 156 Ark. 148.

4. There were no errors in the rulings of the court in refusing to grant appellant's prayers for instruction, or in the instructions which the court gave. The law of the case was declared in conformity with many pre-

vious rulings of the court, and it is not therefore necessary to set out and discuss the instructions in detail. We have considered such assignments of error as were properly preserved in the record and made grounds of the motion for a new trial.

The record presents no reversible error. The judgment is therefore affirmed.