DOWELL *v.* STATE.

Crim. 3952

Opinion delivered September 23, 1935.

*Glover & Glover,* for appellant.

*Carl E. Bailey,* Attorney General, and *Guy E. Williams,* Assistant, for appellee.

JOHNSON, C. J. Appellant, Loy Dowell, was separately indicted by the grand jury of Hot Spring County for the crime of murder in the first degree for the alleged killing of Vernon, Macy, and James Ray, Jr. By consent of all parties, the indictments were consolidated for trial purposes, and subsequently he was convicted as charged in the indictments, and his punishment assessed by the jury at life imprisonment in the State Penitentiary. In obedience to the judgment of conviction, appellant was lodged in the State Penitentiary. Subsequently an appeal was perfected in this court, and we are now asked to remand him to the county jail of Hot Spring County pending his appeal which presents the first question for consideration.

*Brown* v. *State,* 154 Ark. 604, 243 S. W. 867, is cited and relied upon by appellant as supporting his contention in this behalf, and so it does, but must be overruled. *Brown* v. *State, supra,* either overlooks or ignores § 3418 of Crawford & Moses' Digest which provides in effect that when a judgment of conviction has been executed at the time or before the certificate of appeal is delivered to the sheriff of the county, such defendant should remain in the penitentiary pending his appeal. Appellant does

not contend that a certificate of appeal was served on the sheriff of Hot Spring County prior to his incarceration in the State Penitentiary. Therefore, under the plain mandate of the statute, he must remain in the penitentiary pending his appeal unless a bond be effected as required by law. Such is the status of appellant, and he must abide the statutory mandate. This court so expressly held in Ex parte *Lawrence*, 71 Ark. 54, 70 S. W. 470, and we now revert to its doctrine.

Appellant's principal contention for reversal on appeal is that the testimony adduced by the State is insufficient to support the conviction, and this makes it necessary to review the testimony at some length. On January 25, 1935, Vernon Ray, his wife, Macy Ray, and James Ray, Jr., his infant son, left their home in Hot Spring County to visit Rawford Ray, a brother of Vernon Ray, who resided at Dalark in Dallas County. On January 27, 1935, at about 3 o'clock P. M., Vernon Ray, his wife and child, departed from the home of Rawford Ray ostensibly to return to their home in Hot Spring County, and this was the last time either of them was seen alive. On February 19, 1935, the dead bodies of Vernon Ray and his wife and child were found in L'Eau Frais Creek in Hot Spring County some two and one-half miles from Rawford Ray's home and at a point immediately adjacent to the nearest and most practical route from Rawford Ray's home in Dallas County to the home of the deceased in Hot Spring County. All the bodies were in a high state of decomposition. Vernon Ray appeared to have been shot in the back of the head with a load of number 4 or 5 shot. James Ray, Jr., appeared to have been shot in the forehead with similar pellets. The head of the wife, Macy Ray, appeared to have been crushed by some blunt instrument. Appellant resided about three-quarters of a mile from the point where the bodies were found. A State witness, a Mr. Nix, testified that about 11 or 12 o'clock A. M., Sunday, January 27, 1935, he left his home, which is situated in that vicinity, to hunt hogs which were running at large in the bottoms of L'Eau Frais Creek, and that while returning home about 3 or 4 o'clock of that day he heard

a dog barking, a gun fired several times and human voices in the vicinity of the place where these dead bodies were subsequently discovered; that at the time of the shooting, witness was something like a quarter of a mile distant down the creek bottom; that he walked on up the creek to the point where the noise came from where he saw some person peering into the water of the creek, dressed with a corduroy cap upon his head, a brown hunting coat around his body and rubber boots and had a gun in his hands; that witness was some 35 steps distant from this party at the time and was of the opinion it was "Ole Brother Dowell" (the father of the appellant); that Loy Dowell's two dogs were with this party at the time. Subsequently to the discovery of the dead bodies, a yellow empty 16-gauge shotgun shell was found near the scene of the crime; some trees were found to have been pierced with shot; between the point where the empty shell was discovered and the trees which were pierced with shot the wadding from the shotgun shell was found which was red in color. This wadding showed that the shell contained number 4 shot. Appellant owned the only 16-gauge shotgun discoverable by the sheriff in that vicinity, and was likewise in possession of a corduroy cap, a brown hunting coat and rubber boots similar to those worn by the party seen by the witness Nix at the supposed scene of the crime. At the time of appellant's arrest his hunting coat contained yellow 16-gauge shotgun shells similar in color and identical in load and wadding with that found at the supposed scene of the crime.

The law is well settled in this State that a jury's verdict which rests solely upon speculation and conjecture will not be permitted to stand. *Jones* v. *State,* 85 Ark. 360, 108 S. W. 223; *Martin* v. *State,* 151 Ark. 365, 236 S. W. 274; *Adams* v. *State,* 173 Ark. 713, 293 S. W. 19; *Hogan* v. *State,* 170 Ark. 1143, 282 S. W. 984. On the other hand, this court, in testing the sufficiency of the testimony to support a jury's verdict, views such testimony in the light most favorable to the State. *Morgan* v. *State,* 189 Ark. 981; *Rhea* v. *State,* 104 Ark. 162, 147 S. W. 463. Moreover, circumstantial testimony is legal

and proper, and, when properly connected, furnishes a substantial basis and support for a jury's verdict. *State* v. *Jennings*, 10 Ark. 428; *Scott* v. *State*, 180 Ark. 408, 21 S. W. (2d) 186; *Taylor* v. *State*, 178 Ark. 1200, 10 S. W. (2d) 853.

The testimony adduced by the State against appellant, although circumstantial in character and not over convincing to all members of this court, is substantial and entirely sufficient to support the verdict. The mere fact that no motive for the crime was established and premeditation and deliberation were not made to affirmatively appear from the State's testimony, does not render the jury's verdict speculative. We expressly held in *Weldon* v. *State*, 168 Ark. 534, 270 S. W. 968, that the manner in which the killing was effected was a potent fact and circumstance tending to prove or disprove premeditation and deliberation. There can be no doubt that the one committing this murder did so with deliberation and premeditation. The deceased Vernon Ray was shot in the back of the head at close range; the child was also shot in the head; Macy Ray's head was crushed with some blunt instrument, and all the bodies were then thrown into the deep waters of L'Eau Frais Creek. These facts unerringly present all the earmarks of deliberation and premeditation on the part of the perpetrator of this crime.

Appellant next urges that the trial court erred in refusing his counsel the privilege of examining certain jurors on *voir dire* examination. This contention rests on the following:

Frank Carmack, a prospective juror, was asked the following question by Mr. Glover: ''From what you have heard and what you have seen in the newspapers have you formed an opinion as to whether this defendant was guilty or innocent? (The juror did not understand, and the court asked this question): Q. Did you from what you read in the papers form an opinion as to whether this defendant was guilty or innocent? A. Only what I saw in the papers. If the evidence was the same and the evidence came out like that I would have an opinion. ''Mr. Glover: You have that opinion now? A.

No, only what I read in the papers. Q. From what you read in the newspapers would it take evidence to remove that? Court: Mr. Glover, that question is improper. When the juror has stated that the only opinion he holds is based upon newspaper reports and current rumor and that he will lay aside that opinion and try the case as though he had never heard it spoken of, the court will not permit you to ask him if it would take testimony to remove the opinion. I want to treat you right, but you are going to have to abide by the rulings of this court, and I told you that you cannot ask that question. Mr. Glover: Save my exceptions. This man is on trial for his life, and I want to find out from this juror whether he is a fair juror, and, even though the court told me not to ask the question, I wanted to ask the question for the purpose of exercising my right or peremptory challenge. Court: The court will rule that the question was improper. Mr. Carmack, from what you read in the papers and from what you heard, did you form or express an opinion as to whether a crime was committed or not, and whether this man here committed the crime or not? A. According to the way I read it in the papers, I formed an opinion. Court: Did you form or express an opinion as to who committed the crime, and have you that opinion now? A. No, sir. Court: Have you any opinion as to whether or not this man charged here committed the crime? A. No, sir. Court: But you do have an opinion that a crime was committed by somebody? A. Yes, sir, that is all I know.''

It will be noted from the proceedings quoted that the juror, Frank Carmack, expressly stated that he had no opinion based on newspaper reports in reference to the guilt or innocence of the appellant, but did have an opinion based on newspaper reports that a crime had been committed by some one. The juror was competent and qualified under previous opinions of this court, and no error is made to appear in this assignment. The quotation shows that the juror was minutely and closely questioned by the court in reference to his qualifications and no substantial right was denied appellant in this regard.

Error is also assigned in reference to the giving and refusing to give certain requested instructions. It would unduly extend this opinion to set out and discuss in detail all the instructions given and refused by the court. It must suffice to say that we have carefully read and considered all the instructions given and refused by the trial court to the jury in charge, and we are of the opinion that no error is made to appear from this contention.

Complaint is also made that the State was permitted to examine appellant on cross-examination with reference to other crimes committed by him previous to his trial. We have consistently held that, when a defendant in a criminal prosecution voluntarily becomes a witness in his own behalf, he thereby subjects himself to such cross-examination as may elicit facts or circumstances bearing upon his credibility, and the complaint here urged does not transcend this well-established rule. *Turner* v. *State,* 100 Ark. 199, 139 S. W. 1124; *Turner* v. *State,* 128 Ark. 565, 195 S. W. 5; *Smedley* v. *State,* 130 Ark. 149, 197 S. W. 275; *Kyles* v. *State,* 143 Ark. 419, 220 S. W. 458; *Pearrow* v. *State,* 146 Ark. 201, 225 S. W. 308; *Canada* v. *State,* 169 Ark. 221, 275 S. W. 327; *Curtis* v. *State,* 188 Ark. 36, 64 S. W. (2d) 86; *McGuire* v. *State,* 189 Ark. 503, 74 S. W. (2d) 215.

No error appearing, the judgment of conviction is affirmed.