THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. EDWARD J. McNAMARA, PLAINTIFF IN ERROR.

Argued November 29, 1935—Decided May 20, 1936.

For the plaintiff in error, *Walter G. Winne.*

For the defendant in error, *John J. Breslin, Jr.,* and *Leland F. Ferry.*

The opinion of the court was delivered by

BODINE, J.  The defendant, Edward J. McNamara, was found guilty of murder in the first degree and was sentenced to suffer the death penalty.  He and the deceased Martin left Brooklyn, New York, sometime during the day of May 7th, 1935, and two days later participated in a bank robbery at Newburgh, New York, obtaining the sum of $14,376.86. On the evening of that day, about ten-thirty o'clock in the evening, an automobile pulled off the road in an isolated part

of the borough of Hohokus in Bergen county, and a shot, or shots were heard by several persons residing in the neighborhood. One of these witnesses was apparently observed by the driver of the car, the headlights were turned off and presently the car pulled away. These persons hesitating to leave their homes that night discovered the next morning the body of Martin near the point where the car had been. All identifying marks had been removed from his clothing save a little laundry tag.

The proofs indicated that Martin died a few hours after the shot or shots were heard. The wounds causing death were inflicted by the use of both a forty-five and thirty-eight calibre revolver. One of the wounds was in the abdomen, probably inflicted while he was standing, and there were two on the left side of the head and another on the right side. The shots were fired from close range as evidenced by powder marks. Around midnight on the same day (May 9th), McNamara and a gangster named Heal went to the house where Loretta Maher, the common law wife of Martin, was staying, and told her that Martin had been killed that night while they were riding with him. They said that he had been shot from a pursuing car. As before noted, the fact was that the wounds were in the abdomen and side of the head and could hardly have been so inflicted. They then handed her deceased's wallet in which there was $1,635. This money was not connected in any way with the money obtained in the bank robbery. The defendant did not take the stand in his own behalf.

On such proofs it was open to the jury to find that the wallet had been taken from the person of Martin after he had been killed. The money could have been part of his share of that obtained in the robbery of the bank, and they could find that Martin had been killed in order that his companions might obtain some of the money which he had in his possession.

Although the case was not tried on the theory that it was murder in the first degree as part of a robbery, the attendant robbery is persuasive evidence of motive and of preconceived

joint purpose to take life. When to such motive and the attendant killing is added the use of different weapons and the firing of shots at close range, the jury could well find a deliberate and premeditated intention to kill as defined in our statutes.

"To constitute murder in the first degree under our statute, there must be an intention to take life. No particular length of time need intervene between the formation of the purpose to kill and its execution. * * * It is enough that the design to kill be fully conceived and purposely executed." *Donnelly* v. *State*, 26 *N. J. L.* 601. See, also, *State* v. *Close*, 106 *Id.* 321.

The repeated firing of a revolver is sufficient to establish such premeditated purpose. 29 *Corp. Jur.* 1099, § 74; *People* v. *Harris*, 209 *N. Y.* 70, where six shots were fired; *Brown* v. *State*, 62 *N. J. L.* 694; where three shots were fired; *People* v. *Governale*, 193 *N. Y.* 581.

The first point argued is to the effect that there was error in the manner in which the jury was impaneled. But it is apparent from the record that the question is not before us by proper exception. Besides, the defendant suffered no manifest wrong or injury because it appears that his counsel was entirely satisfied with the jury as impaneled. In fact, there is no complaint whatever that the jurors, as impaneled, were not impartial to the defendant.

It is next urged that there was error in permitting testimony as to McNamara's participation in the robbery at the Newburgh bank and to the fact that the deceased Martin had been one of his companions in that crime. It seems not. It was not proof of an isolated and entirely unconnected crime, but was admissible to show the state of defendant's mind and the passion which actuated him in the events that followed. The testimony had a direct relevancy to his state of mind when the offense for which he was being tried was committed. *State* v. *Deliso*, 75 *N. J. L.* 808, 816; *State* v. *Boccadoro*, 105 *Id.* 352.

We have carefully examined the testimony introduced in evidence given by the accused in New York State while resist-

ing extradition proceedings in order to escape, if possible, the trial now under review. He was represented by counsel. His testimony was voluntary, and if the proof of what he then said was subject to any valid objection it does not appear to have been made. The defendant suffered no manifest wrong or injury by proof of statements which he had volunteered under all the circumstances proved.

It is obvious that the testimony of Loretta Maher was competent and she could also tell what was said by Heal in McNamara's presence, since it was uncontradicted by him.

We have examined the charge of the trial court and read as a whole, no legal error justifying a reversal appears. It also seems clear to us that the verdict of guilty of murder in the first degree was not against the weight of evidence, but was clearly supported by the proofs adduced.

Judgment is affirmed.

BROGAN, CHIEF JUSTICE. (Dissenting.) The trial court, in my judgment, fell into reversible error in the impaneling of the jury, by overruling a peremptory challenge by the defendant, addressed to the eleventh and twelfth jurors. The opinion of the majority holds that this question was not raised by proper exception. This conclusion seems untenable.

The defendant was being tried before a struck jury as provided for by statute entitled "A Further Supplement to an act entitled 'An act relating to the courts having criminal jurisdiction and regulating proceedings in criminal cases (Revision of 1898) approved June fourteenth, eighteen hundred and ninety-eight,' approved April 30th, 1929." *Pamph. L.* 1929, *ch.* 246, *p.* 459.

The list of thirty-six jurors from which the trial jury should have been selected was exhausted at a point when only ten jurors were in the box. At this juncture, the impaneling of a *struck* jury for the trial of this indictment failed. This is an obvious truth. The court then had recourse to jurors from the general panel. To this method of completing the trial jury no objection was offered. The defendant had already exhausted the five peremptory challenges permitted by

the Struck Jury act. *Comp. Stat., p.* 1846, § 81. But when the names of jurors from the general panel were placed in the box and the drawing of names continued, defendant attempted to exercise a peremptory challenge to the eleventh juror thus called. The court overruled the challenge, defense counsel prayed an exception, which was allowed and sealed. Why this does not efficaciously raise an assignment of error and a specification of cause for reversal is not clear. Defense counsel, in his argument at this point, stated to the court that he had no objection to names from the general panel being used to complete the jury so long as he might have twenty peremptory challenges, which right is afforded those on trial for murder where a jury other than struck or foreign juries are to hear and determine the case. And so this objection at the particular time seems to have raised the fundamental question, *i. e.,* the method of impaneling the jury. No utterance by the court, up to this point, put counsel on notice that he would be foreclosed from asserting this right of challenge. The position taken by defendant that the trial jury might be completed from a list other than the struck jury panel, could not be enlarged into a consent that he was to have no further right of peremptory challenge. On the contrary, the exception reverted to the court's action, initially, in going to the general panel for the selection of a petit or traverse jury.

In passing, it might be observed that section 76 (Criminal Procedure act, *supra*), which deals with the selection of struck juries, was amended by chapter 260, *Pamph. L.* 1919, *p.* 618, and was further amended by chapter 246, *Pamph. L.* 1929, which second amendment repealed "by necessary implication the *provisions* of the act of 1919" (*supra*). *State* v. *Donato,* 106 *N. J. L.* 397, 404. Significantly enough, neither act provides any means by which a trial jury may be completed if the struck jury panel has been exhausted before the trial jury has been selected.

Now either the statutory provision for a struck jury is exclusive or it is not. If it is exclusive, the court fell into error in going to the general panel for jurors. If it is not exclusive, and the court was correct in drawing upon names

from the general panel, it seems incongruous indeed to deny the defendant the right of peremptory challenge which the very statute in the matter of petit or traverse juries guarantees. Cf. Statute, section 80, *supra*.

In the opinion of the majority, it is stated that the "defendant suffered no manifest wrong or injury because it appears that his counsel was entirely satisfied with the jury as impaneled." This is entirely beside the issue. Defendant cannot waive the protection and safeguards which the law provides in murder cases. This court unanimously reversed a conviction in a homicide case where the jury was not sequestered even when the record indicated that the state's attorney, and defendant's as well, has acquiesced in the dispersing of the jury during the trial. *State* v. *O'Leary,* 110 *N. J. L.* 36.

Therefore, it would seem that the question was properly raised and if that be so, it follows that a denial of the right of challenge was error and that being so, it required a reversal of the judgment. Mr. Justice Heher and Judge Rafferty authorize me to say that they are in accord with this view.

*For affirmance*—THE CHANCELLOR, LLOYD, CASE, BODINE, DONGES, HETFIELD, DEAR, WOLFSKEIL, JJ. 7.

*For reversal*—THE CHIEF JUSTICE, HEHER, PERSKIE, WELLS, RAFFERTY, JJ. 5.