Julius INGRAM, Petitioner,

v.

UNITED STATES of America,
Respondent.

Misc. No. 1797.

United States Court of Appeals
District of Columbia Circuit.

Dec. 6, 1962.

Messrs. Barron K. Grier and Philip S. Neal, Washington, D. C. (both appointed by this court) were on petitioner's motion for reconsideration.

Messrs. David C. Acheson, U. S. Atty., and Nathan J. Paulson and Anthony G. Amsterdam, both Asst. U. S. Attys., at the time the opposition was filed, were on respondent's opposition to the motion for reconsideration.

Before BAZELON, Chief Judge, and WILBUR K. MILLER and BURGER, Circuit Judges, in Chambers.

PER CURIAM.

The motion before us presents a simple but important issue. Petitioner filed in this court, pursuant to 28 U.S.C. § 1915, a *pro se* petition for leave to prosecute an appeal *in forma pauperis*, which in a confused and inartful way complained of his conviction in the District Court under an indictment charging assault with a dangerous weapon and assault with intent to kill. In accordance with our practice, we appointed counsel for the reason that petitioner personally was not qualified to analyze his case or perfect and present points for appeal.

Later, at the request of assigned counsel, a second attorney was appointed to assist him, and a period of 30 days was allowed in which to file a memorandum in support of the petition. At their request, this time was twice extended to enable them to file motions for preparation of a complete trial transcript at the expense of the United States. We denied the motion without prejudice, and the present motion for reconsideration followed.

At the outset, we note that court-appointed counsel do not adopt the claims of error advanced by their client in the *pro se* petition, but on the contrary seem to take pains to avoid asserting any error. Indeed, they frankly concede they are unable to claim error, but say their inability to do so is due to the fact that they have not been provided with a complete transcript. It is their view that, having been unable to discover a ground for appeal through the available sources of information, they are entitled to a transcript to conduct a search for error as a matter of due process of law. We now consider this argument and the contention that it is supported by Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

We recognize that the Coppedge case established a new standard for providing an indigent petitioner with an "adequate record" to enable him "to attempt to make a showing that the District Court's certificate of lack of 'good faith' is in error," and we have implemented a new procedure to comply with its directive. Prior to the Coppedge decision, however, we decided motions for transcripts upon the standards set forth in Whitt v. United States, 104 U.S.App.D. C. 1, 259 F.2d 158 (1958). To meet those requirements it was necessary for appointed counsel to demonstrate (1) that the petition for leave to appeal *in forma pauperis* contained a claim of error which, placed in its factual setting, was non-frivolous on its face, and (2) that a transcript was essential to make manifest this claim of error because counsel, after conducting an extensive investigation of the District Court proceedings,

including interviews with defense counsel, the prosecuting attorney and the trial judge, was unable to develop the point independently. Under this system, obviously, a transcript could not be granted until after counsel was appointed and had conducted a thorough investigation of the case.

█ It is clear that the Coppedge decision no longer permits us to employ this procedure. We are now instructed (369 U.S. at 446, 82 S.Ct. at 922) that:

" * * * If, on the other hand, the claims made or the issues sought to be raised by the applicant are such that their substance cannot adequately be ascertained from the face of the defendant's application, the Court of Appeals must provide the would-be appellant with both the assistance of counsel and a record of sufficient completeness to enable him to attempt to make a showing that the District Court's certificate of lack of 'good faith' is in error and that leave to proceed with the appeal *in forma pauperis* should be allowed. * * * "

The Court later observed (369 U.S. at 450, 82 S.Ct. at 924) that:

" * * * [S]tatistics demonstrate the inevitable delay that surrounds a procedure in which the courts give piecemeal attention to the series of motions that indigents must make before a final adjudication of the merits of their cases is reached. Delays described in years between trial and final decision in criminal cases are the unhappy result of separate considerations of motions for the appointment of counsel, for the preparation of a transcript of the trial proceedings and, ultimately, for the leave to appeal *in forma pauperis*. * * * "

This demonstrates quite clearly that an adequate record must be provided when counsel is appointed. Accordingly, we have devised the following implementing procedure: when a *pro se* petition is filed, upon direct appeal from judgment

of conviction, and the claims of error stated therein (e. g., "insufficiency of evidence," "unlawful search and seizure,") are so conclusory in nature that "their substance cannot adequately be ascertained," counsel will be appointed and, simultaneously, the portion of the transcript of proceedings which relates to the conclusory allegations will be ordered so that appointed counsel may determine their merit. Of course, counsel will not be limited to the transcript initially allowed if he can in good conscience advance other claims of error requiring additional portions of the transcript.

By this procedure much of the attributed "inevitable delay" caused by "piecemeal attention to the series of motions that indigents must make" is ended. It is based on our belief that the Coppedge opinion does not require a complete transcript to be prepared in every case, and that to obtain even a partial transcript some showing of error, if only vague and conclusory, must be made.

Applying this procedure to the present case, it is plain that counsel for petitioner have not complied with our view of the standard enunciated in the Coppedge case. As stated previously, it appears that counsel have deliberately avoided asserting error in order to buttress their argument that their inability to claim error entitled them to a complete transcript under due process principles. Apart from the merits of this contention, which we will shortly consider, it is obviously unrelated to the question of whether a transcript should be granted under the Coppedge case. If counsel wish to press their motion for transcript under that case they must meet its terms by claiming *some* error. If, on the other hand, they seek a transcript as a matter of due process of law to *search* for some claim of error not suspected or articulated, they must recognize, as we now hold, that the Coppedge case is not applicable. If our position is not correct, then the rule is that a transcript must be furnished to every indigent appellant at Government expense so that he may search for error, even though he has alleged none. The Supreme Court has not yet gone so far.

We come now to the actual root of appellant's argument. His counsel say that, since interviews with the principals to the proceedings in the District Court have not revealed a basis for claiming error, a complete transcript must be granted so they may search for error. Otherwise, they continue, no effective means exists for attacking petitioner's conviction, and a barrier is thus erected that would not confront a non-indigent defendant in a similar situation. We are not unsympathetic with this view. Indeed, without relying expressly upon due process principles, we have in the past required the Government to provide transcripts to indigent petitioners where their counsel demonstrated the complete inadequacy of the sources of information in the District Court. In Dean v. United States, Misc. No. 1644, for example, we ordered a transcript where counsel for petitioner brought to our attention that defense counsel at trial had since died, that the prosecutor had since resigned from the United States Attorney's Office, and that the trial judge could not be reached. In such circumstances it was essential that appointed counsel be provided with a transcript because the normal sources were not available.

In sharp contrast to the Dean case, however, counsel make no such showing here. While they have set out in their motion what appears to be a comprehensive investigation of the proceedings in the District Court, they do not inform us in specific terms what was discovered from the parties interviewed or from their examination of the record. Instead, after relating diligent efforts in a very general fashion, they draw the conclusion that no claim can be presented unless a complete transcript is prepared at Government expense. We cannot accept such a conclusory representation, for to do so would be to delegate to counsel our judicial function in this regard, without reserving any means by which to check or determine the accuracy of their

judgment. Moreover, to adopt a system permitting all counsel appointed by this court, who perform the terms of their assignments with varying degrees of diligence, to decide for themselves when sufficient investigation has been made to allow them to represent that no claim of error can be made without the aid of a transcript, would be to court the possibility of abuse as well as the danger of bad judgment.

■■ Accordingly, it is our view that a superficial showing of some investigation, unaccompanied by even a hint that some error had been discovered, is insufficient to warrant preparation of a complete transcript at Government expense, unless it is coupled with a specific statement demonstrating the thoroughness of the investigation, and containing a detailed recitation of the results thereof. In Griffin v. Illinois, 351 U.S. 12, 20, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court said:

> " * * * We do not hold, however, that Illinois must purchase a stenographer's transcript in every case where a defendant cannot buy it. The Supreme Court may find other means of affording adequate and effective appellate review to indigent defendants. For example, it may be that bystanders' bills of exceptions or other methods of reporting trial proceedings could be used in some cases. * * * "

And see Johnson v. United States, 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593

(1957) ; Miller v. United States, 317 U. S. 192, 198, 63 S.Ct. 187, 87 L.Ed. 179 (1942). Where we might, therefore, require counsel for petitioner to appeal upon a bystander's bill of exceptions, or upon an agreed statement of facts, we do not think it unreasonable to place upon them the burden recited above. We are unable to see why present counsel cannot, upon the basis of their investigation, advise us as to the circumstances giving rise to the indictment, the theory of the prosecution, the defenses raised by petitioner, the witnesses presented by each party and the pertinence of their testimony, the objections made by defense counsel, and the possible grounds for appeal. Absent such a showing, however, we find no merit to the contention that petitioner is being deprived of due process of law and, since we have already decided that the Coppedge case does not hold that a transcript must be furnished to enable a petitioner to search for unsuspected errors, the instant motion for preparation of a complete transcript at Government expense is denied. Because, however, the views expressed herein relating to the Coppedge decision are stated for the first time, we deny the motion without prejudice to its renewal upon a showing in compliance with this opinion and with Coppedge standards. Until such steps have been taken by counsel, they have not utilized available remedies or complied with judicial holdings.[1]

Motion denied.

---

1. Without detracting from the views just expressed, we consider briefly the suggestion raised by the dissenting member of the panel that, although counsel for petitioner have not asserted error within the meaning of the Coppedge case, petitioner himself did so in the *pro se* petition filed prior to appointment of counsel and prior to decision in the Coppedge case. We note that counsel do not advance this argument. Indeed, the theory prosecuted by them is to the contrary—that they should be granted a transcript because they are completely unable to assert any claim of error. The argument, therefore, is gratuitously proffered and it is doubtful whether counsel would consider its advancement to their benefit.

Second, as previously mentioned, we appointed counsel to represent petitioner because he had, not unnaturally, complained of his conviction in a very confused and unskillful manner, and because he was not qualified to present and perfect points on appeal. Counsel, who were undoubtedly aware of petitioner's complaints and who conducted an investigation that should have enabled them to assess their merits, do not adopt or support their client's claims. Their failure to do so gives rise to the reasonable inference that they regard the complaints asserted by the client as unfounded and, in any event, we must assume that counsel considered them in preparing this motion for transcript in which they have

BAZELON, Chief Judge (dissenting).

My brethren recognize that under Coppedge an indigent petitioner is entitled to at least a partial transcript based upon conclusory claims of error in his *pro se* petition. This clearly appears from their statement that Coppedge requires that:

> "when a *pro se* petition is filed, upon direct appeal from judgment of conviction, and the claims of error stated therein (e. g., 'insufficiency of evidence,' 'unlawful search and seizure,') are so conclusory in nature that 'their substance cannot adequately be ascertained,' counsel will be appointed and, *simultaneously,* the portion of the transcript of proceedings which relate to the conclusory allegations will be ordered * * *." [Emphasis supplied.]

Thus if the *pro se* petition in the present case had been filed after Coppedge, this court would have ordered the transcript simultaneously with the appointment of counsel. Hence appointed counsel would not be required to accept or reject petitioner's *pro se* claims without the benefit of relevant portions of the transcript.

Here we appointed counsel and denied his request for a transcript before Coppedge. Our denial was based on our pre-Coppedge procedure of appointing counsel and then requiring him to establish the need for a transcript based upon claims of error. Our post-Coppedge procedure eliminated this requirement. As I read the court's opinion today, it holds this requirement applicable simply because counsel's appointment and request

certified that no claim of error can be made. We have no difficulty in distinguishing this case from those contemplated by the Coppedge case.

Finally, as anticipated by the two preceding points, the very purpose of allowing and appointing counsel to represent indigent petitioners is to establish a means of communication between the litigant and the court. These appointees are officers of the court, subject to the control and discipline of the court and familiar with the law and its procedural mechanisms. Once counsel appears of

for a transcript occurred before Coppedge. I think it clear, however, that Coppedge governs since the matter is now before us on timely motion for reconsideration "in light of Coppedge." I would therefore grant the motion for reconsideration and order the transcript.

Since the single issue on this motion is a very narrow one arising from the unique chronology of the case in relation to Coppedge, it is unnecessary for me to intimate any opinion regarding matters in the majority opinion which go beyond the unique and narrow circumstances of this case.

record on behalf of a litigant, all communication must be by and through said counsel. This does not preclude the client in all circumstances from communicating directly with the court, as for example when he wishes to complain of his counsel's representation. In some such cases we have permitted assigned counsel to withdraw. But we cannot conduct an orderly administration of justice by hearing, simultaneously, different and perhaps conflicting contentions of client and lawyer. An appeal must have but one voice.