294

CHARLES W. ELLIOTT, Plaintiff-in-error,

*v.*

STATE OF TENNESSEE, Defendant-in-error.

435 S.W.2d 812.

(*Nashville,* December Term, 1968.)

Opinion filed December 31, 1968.

WALTER A. SANFORD, Clarksville, ROSCOE J. HAMBY, and
AVON N. WILLIAMS, JR., Nashville, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, and GEORGE W. McHENRY, JR., and ROBERT F. HEDGEPATH, Assistant Attorneys General, of Nashville, for defendant in error.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

Charles W. Elliott was indicted, tried and convicted of the crime of rape, and sentenced to death. The Court of Criminal Appeals affirmed by opinion filed May 3, 1968. This Court granted certiorari to examine certain alleged errors.

A very brief history of the case is that: On January 4, 1966, Mrs. Daphine Grimsley Huddleston, a forty-five year old white woman, was abducted by a Negro man who got into her parked car as she was leaving the parking lot of a shopping center in Clarksville, Tennessee. The man told her that he held a gun in his left hand under his coat, and under this duress she drove her car according

to his directions to a remote, secluded place. Here, she was ordered out of the car and away from the road and made to disrobe, after which the man raped her. After the assault, her assailant saying to her it was necessary, placed his hands around Mrs. Huddleston's throat and choked her until she became unconscious. Subsequently regaining consciousness, she crawled to the road, and made her way down it until she was discovered by two boys. Her car was found abandoned on a street in Clarksville. Elliott was arrested the next day and was subsequently indicted for the rape, on May 27, 1966.

Elliott filed a plea in abatement attacking this indictment on the ground the jury commissioners who selected the grand jury venire unlawfully and deliberately limited proportionately the number of Negroes selected for jury service, solely on account of their race and color, so that Negro citizens of Montgomery County were deliberately and unlawfully excluded from all grand juries in the county for many years preceding the grand jury which indicted the petitioner; and that this condition applied when the grand jury which indicted petitioner was selected. This plea was heard on its merits on December 12, 1966, and on December 28, 1966, the court decided the plea was without merit.

In addition, there was a motion to quash the indictment, and a motion for change of venue, both of which were overruled, the latter being overruled after the introduction of evidence.

There was also a challenge to the array of the jurors, because Elliott was a Negro and the system of jury selection practiced in the county discriminated against him, by denying his race representative membership on the jury panel. This motion was denied by the trial court.

The selection of a jury to try the case required a special panel, and consumed two full days, and a fraction of a third day, from January 12, 1967 to January 14, 1967.

After a three day trial, on January 17, 1967, petitioner was convicted of rape, and his punishment fixed at death by electrocution.

Petitioner filed a motion for a new trial, specifying substantially that there was no evidence to support the verdict and the verdict was contrary to the preponderance of the evidence; that the court erred in failing to sustain the challenge to the array of jurors; erred in failing to grant petitioner's motion to change venue; erred in failing to sustain petitioner's plea in abatement; erred in failing to sustain petitioner's motion to suppress evidence obtained by the investigating officers who took him into custody; erred in failing to suppress evidence obtained by questioning petitioner without informing him he was the principal subject in a capital case, and without properly advising him of his constitutional rights to counsel. This motion was overruled and petitioner perfected an appeal which was heard by the Court of Criminal Appeals.

In the Court of Criminal Appeals, the matters complained of in the motion were assigned as error, and all of the assignments were overruled and the judgment affirmed, with one judge dissenting.

▪ Coupled with the petition for certiorari filed with this Court is a motion, based on the indigency of the petitioner, to order the trial court to authenticate and certify to this Court a transcript of the hearing on the plea in abatement to the indictment, a transcript of the voir dire proceedings, and a transcript of the proceedings

on the hearing of the motion for a new trial, involving a request for portions of the transcript to be furnished by the state, because of defendant's indigency. It is contended these missing parts of the transcript are indispensable to a consideration by this Court of the petitioner's claim of deprivation of equal protection of laws and due process of law secured by the Fourteenth Amendment, because of systematic exclusion of Negroes from grand and petit juries, and from the grand jury which indicted and the petit jury which convicted petitioner. *Patton v. Mississippi,* 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76; *Norris v. Alabama,* 294 U.S. 587, 55 S.Ct. 579, 70 L.Ed. 1074; *Carter v. Texas,* 177 U.S. 442, 20 S.Ct. 687, 44 L.Ed. 839; *Bonds v. State* (1967), 220 Tenn. 555, 421 S.W.2d 87, which are cited by petitioner, support his contention that he has the right to have this Court examine these constitutional questions.

The contention is also made that the missing parts of the transcript are indispensable to a consideration by this Court of petitioner's further contention his rights under the Sixth and Fourteenth Amendments to the Constitution of the United States, as defined and proscribed in *Witherspoon v. State of Illinois,* (June 3, 1968), 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, were erroneously denied to him.

It is contended this motion, to have the trial court certify the missing parts of the transcript, should be allowed because a motion was made in the trial court, based on petitioner's indigency, that these parts of the transcript be furnished, and that this motion was overruled without a determination by the trial court of the fact of petitioner's claimed indigency and his right to the transcripts without even a hearing thereon. This conten-

tion of petitioner is countered by the state, it being argued there is nothing in the record showing such a motion was ever made in the trial court.

There is in the record a motion as follows:

"TO THE HONORABLE WILLIAM O. BEACH,
JUDGE OF THE CRIMINAL COURT FOR
MONTGOMERY COUNTY, TENNESSEE.

STATE OF TENNESSEE
VS.
CHARLES W. ELLIOT

## MOTION

This writing is to confirm a verbal motion made to this Honorable Court on or before May 31, 1967, wherein the Defendant, Charles W. Elliott, through his attorneys, has moved the Court to order the State, at the expense of the State, to produce the transcript of the Voir Dire Examination, the transcript of a hearing in this Honorable Court on the 11th day of January, 1967, of the Plea to Abate the Indictments based upon a lack of representation of the Negro race in the composition of the Grand Jury which indicted this Defendant; and the transcript of the argument of the Motion for a New Trial, all of which are required for a complete and impartial examination of the merits of the Appeal in this cause, and which are not available to the Defendant because of his having become impecunious after his conviction in this cause.

The causes for this Motion are:

1. Neither this Defendant nor his family, who procured the services of counsel and paid the previous costs in this

cause, are financially able to assume the burden of the production of the remnants of the record in this cause as requested above, as evidenced by the Pauper's Oath attached hereto execute by the Defendant, Charles W. Elliott.

2. In the grounds upon which the Motion for a New Trial is based it is stated in Paragraph 3: 'The Court erred in failing to sustain the challenge to the array of jurors * * *' and in Paragraph 5: 'The Court erred in failing to sustain the Defendant's plea to abate the indictments because of the fact that his race was unrepresented in the Grand Jury that indicted him.'

3. As can be seen from the foregoing, the substance of the complaint of a lack of fairness in these proceedings is an allegation on the Defendant's part that his Constitutional rights have been violated in the selection of a Grand Jury, in the composition of the Petit Jury, and in holding the Venue in this County, based upon the lack of representation of the Negro race in both juries, and upon hostility in this County against him, both because of his race and because of the adverse and inflammatory publicity widely circulated prior to and during his trial.

4. In view of the foregoing, no appellate review can validity be made of these objections without the consideration of the content of the records herein requested.

WHEREFORE, it is moved and requested that this Court arrange to have these missing transcripts, which have been recorded, produced in typewritten form, at the expense of the State, and included as a part of the records in this case, for consideration by the appellate review, in order to insure justice to the Defendant herein.

s/  Walter A. Sanford

WALTER A. SANFORD

s/  Roscoe J. Hamby

ROSCOE J. HAMBY

ATTORNEYS FOR THE DEFENDANT"

This written motion was marked filed by the Clerk of the Court of Criminal Appeals at the time the record in the case was filed in his office, August 2, 1967. However, because the motion bears no evidence it was filed in the trial court it was contended by the State at the argument of this case at the bar of the Court that it could not be considered.

Since the motion had been marked filed by the Clerk at the time the record in the case was filed, the Clerk of this Court at the Court's direction, made inquiry, and was furnished an affidavit by Howell C. Smith, Jr., Clerk of the Criminal Court of Montgomery County, Tennessee, by which that officer certifies to this Court:

"* * * that a Motion to confirm a verbal motion, addressed to the Honorable William O. Beach, Judge of the Criminal Court for Montgomery County, Tennessee, was lodged by the attorney for Charles W. Elliott, with me as Clerk on or about June 11, 1967. The said Motion was not marked filed by me because it had been previously overruled and in my opinion no hearing would have been scheduled. I sent it with the record to show the efforts to (sic) the defendant but was forwarded as part of the record in this case to the Clerk of the Court of Criminal Appeals at Nashville.

"IN TESTIMONY WHEREOF, I hereunto subscribe my name and affix the seal of said Court at office in Clarksville, on this the 13th day of September, 1968.

s/ Howell C. Smith, Jr.,
HOWELL C. SMITH, JR., CRIMINAL COURT CLERK OF MONTGOMERY COUNTY, TENNESSEE."

■ On this showing the motion will be treated as a part of the record in the case, as on an order of diminution of the record.

■ Considering petitioner's motion in this Court, that the missing parts of the transcript be certified by the trial court for use by this Court: this cannot be done now as the trial court has no jurisdiction or authority to make such an authentication and certification at this time, and our order can only reach existing records and transcripts. The absent parts of the transcript could only come before this Court as parts of a bill of exceptions and no authority now resides in the trial court to make the necessary authentication. T.C.A. secs. 27-110, 27-111.

■ The Court is of opinion, on the basis of the strong prima facie case of indigency made by petitioner, the assertion of his indigency by counsel in the motion, petitioner's own affidavit of poverty attached to the motion, none of which is contradicted by the record, that by state action petitioner was deprived of a right afforded him by T.C.A. sec. 40-2029 et seq., and required by the equal protection clause of the Federal Constitution as defined by the United States Supreme Court.

■ It is clear that T.C.A. sec. 40-2037, when read in pari materia with other sections of Chapter 20 of Title 40, by the most necessary implications, requires the trial judge to consider and determine as in any other case of judicial discretion, whether a defendant is indigent and unable to pay for a transcript of the record and to order the record furnished on a prima facie case of poverty. And if the motion therefore is denied, to state the basis of the denial in the order disallowing the motion, so the order can be reviewed.

■ These Code sections, (40-2029, 40-2040), which provide for transcripts to be furnished indigents in felony cases, are a statutory implementation of the holding of the Supreme Court of the United States in *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, that destitute defendants must be afforded as adequate an appellate review as defendants who have money enough to buy transcripts, and that this means state furnished transcripts for indigents. Reading the Tennessee Code provisions in the light of this case, it is obvious they were enacted to meet its holding.

■ So, while T.C.A. sec. 40-2037 does not provide in so many words for a hearing to determine indigency where a transcript is asked for by a defendant, the statute, in providing that a reporter shall be furnished an indigent defendant "upon the direction of the court", necessarily contemplates it to be the duty of the trial judge to make a determination of indigency upon motion or application, and to act as the facts developed may require.

Although not in point, *Russell v. State ex rel. Arthur,* (1965) 218 Tenn. 118, 401 S.W.2d 586 and *Nelms v. State,*

(1967) 219 Tenn. 727, 413 S.W.2d 378, require mention. In *Russell*, the Court entered an order finding the defendant, who was charged with first degree murder, was without funds and that he had been informed the death penalty was sought. Defendant was represented at the trial by an attorney retained by the defendant's relatives. This counsel asked the reporter to transcribe the trial notes, but declined to be responsible for payment. The trial court did not order the reporter to transcribe the notes, to make a bill of exceptions, and time for appeal expired before the record was perfected. We held the failure of the State to have the record transcribed amounted to deprivation of due process and rendered the judgment against the defendant void. In *Nelms,* a court appointed attorney failed to perfect the appeal of an indigent defendant by timely filing of the bill of exceptions, and we held such a failure was due to state action and amounted to a deprivation of defendant's due process rights.

It is evident the present case involves an equally, if not more serious, deprivation of the defendant's equal protection rights, and must be reversed.

In summary, it is plain from the record that petitioner was denied the federal constitutional right delineated in *Griffin,* as implemented by T.C.A. secs. 40-2029, 40-2043, and for this reason the judgment of the trial court must be reversed.

Having only an incomplete transcript of the trial, and being required to reverse and remand for a new trial on this account, we do not reach the remaining assignments of error. This non-action on the assignments is not an approval by this Court of the disposition made of the

assignments by the Court of Criminal Appeals. The whole case is remanded for a retrial, without the approval either express or implied of the rulings of the trial court on the first trial, on the ground of an incomplete record due to state action which precludes consideration of the remaining assignments.

In view of the disposition here made of the case we do not reach the State's contention that the judgment of the trial court should be affirmed for lack of a bill of exceptions; the denial of the constitutional right of a prima facie indigent to a complete record evident on the face of the part of the record before us precludes consideration of this subordinate question.

Reversed and remanded for a new trial.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.