# THOMAS GREEN, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. July 31, 1969.

Certiorari Denied by Supreme Court Jan. 5, 1970.

Stuart E. Duncan, Chattanooga, for plaintiff in error.

George F. McCanless, Atty. Gen., Albert D. Noe, IV, Asst. Atty. Gen., Nashville, Richard R. Ruth, Jr., Asst. Dist. Atty. Gen., Chattanooga, for defendant in error.

## OPINION

WALKER, Presiding Judge.

The defendant below, Thomas Green, was found guilty of murder in the first degree, in the Criminal Court of Hamilton County, and sentenced to 25 years in the penitentiary, from which judgment he appeals to this court. He contends that the evidence did not warrant a conviction for murder in the first degree, particularly that no premeditation was shown.

The deceased, Morris Snow, age 21 and three other young men (Sylvester Hill, Tommy Lee Billups, and Larry Code) were at Velma's Tea Room in Chattanooga in the early morning hours of January 19, 1968. There was some disagreement between Snow and the defendant. Billups says that the defendant and two other people came to Snow's table and the defendant argued with him, telling Snow: "My brother killed a man the other night, and you're going to mess around here and get killed, too." After this the defendant and Snow shook hands and the defendant said to forget it. He then returned to his table in another part of the room and the deceased, Snow, sat at his table with his three friends and was drinking a bottle of beer.

A short time later, estimated by the witnesses from four to twenty minutes, the defendant returned to the table where Snow was seated and told him to go home, to which Snow replied that he was grown and didn't have to go home. The defendant asked the deceased

to repeat himself and he again said he was grown. All of the witnesses agree that the defendant pulled a pistol and shot the deceased while he was seated at the table with his hands on it. The defendant fired several shots, one striking the deceased back of the left ear and another back of the left shoulder. The second shot was fired after Snow had fallen to the floor. The defendant and one of his friends ran out of the building.

The defendant did not testify or present any evidence as to the facts of the case.

■ Of course, to support a verdict finding a defendant guilty of murder in the first degree, there must be an evidentiary basis for a conclusion that the killing was willful, deliberate, malicious and premeditated, unless effected by poison or lying in wait or in the perpetration of one of the felonies named in the defining statute, in which cases the specified circumstances make it otherwise unnecessary to prove deliberation and premeditation. Bass v. State, 191 Tenn. 259, 231 S.W.2d 707.

■ ■ Here the defendant had had an argument, during which he threatened to kill the deceased. After some minutes and time to become cool, he returned and shot the deceased. The jury was well warranted in concluding the killing came from deliberation and premeditation. It is not necessary that the design or intention to kill should have been conceived or have pre-existed in the mind any definite time anterior to its execution. It is sufficient if it preceded the assault, however short the interval, and the length of time is not the essence of this constituent of the offense. The design may be conceived and deliberately formed in an instant. Hence it is not material that the interval of premeditation was

brief. See Lewis v. State, 40 Tenn. 127; Galvin v. State, 46 Tenn. 283; and Franks v. State, 187 Tenn. 174, 213 S.W.2d 105. This assignment is overruled.

The second assignment of error is:

"The defendant was denied his constitutional right of a full and complete appellate review by reason of the court reporter's failure to fully prepare the transcript of this case."

The defendant contends that the failure of the court reporter to include the arguments of counsel prevented him from having an adequate review and denied him his constitutional rights.

The only grounds for the motion for a new trial were that the evidence did not support the verdict and preponderated against it. The motion did not question the argument or the instructions. The defendant's counsel approved the bill of exceptions.

Under Rule 2 of the Supreme Court, also the rule of this court, all that is immaterial and no longer controverted should be omitted from the bill of exceptions. Arguments of counsel must not be included unless the same were seasonably objected to. Also Rule 14(5) provides that grounds upon which a new trial is sought will not constitute a ground of reversal unless it affirmatively appears that the same was specifically stated in the motion for a new trial in the lower court and decided adversely to the plaintiff in error, but will be treated as waived.

T.C.A. Sec. 40-2029 to 40-2043 provides for transcripts to be furnished in felony cases. T.C.A. Sec. 40-

2037 provides that upon the direction of the court in the case of an indigent defendant, or at the request of any party who has agreed to pay the fee, the court reporter shall transcribe from the original records such parts of the proceedings as are requested. There is no claim that the defendant ever requested any part of the proceedings not included in the bill of exceptions before us.

An indigent must be afforded as adequate an appellate review as defendants who have money enough to buy transcripts. This means state-furnished transcripts for indigents. Elliott v. State, Tenn., 435 S.W.2d 812 (1968). Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, 55 A.L.R.2d 1055. In *Elliott,* the defendant made affidavit of indigency and moved for a transcript of the voir dire examination of the jury panel. Our Supreme Court held that the trial court's refusal of this transcript was error. In the case before us, the defendant made no request for a transcript of argument or any part of the proceedings not included in the bill of exceptions. The record does not show that this defendant is indigent, but at oral argument his counsel announced that he was appointed by the trial court.

No constitutional right is involved here. The Supreme Court of California discusses this question in People v. Hill, 67 Cal.2d 105, 60 Cal.Rptr. 234, 429 P.2d 586, and holds that there is no denial of equal protection to require that an indigent defendant demonstrate the materiality of the summations of counsel before including transcripts of them on appeal. Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331, held that newly appointed counsel on appeal could not discharge

his duty without a transcript of the testimony and the court's charge. This was based on federal statutory grounds rather than the Constitution. Under the federal statute, a court-appointed counsel who represents an indigent on appeal gets at public expense, as a minimum, the transcript which is relevant to the points of error assigned. See Standards Relating to Criminal Appeals (tentative draft), an American Bar Association Project on Minimum Standards for Criminal Justice (1969). At page 90 it says:

> "The Supreme Court has not interpreted this statutory structure to require that the government furnish a full transcript in all appeals by indigents. Such a transcript has been held to be necessary where counsel on appeal is different from counsel in the trial court. Hardy v. United States, 375 U.S. 277 [84 S.Ct. 424, 11 L.Ed. 2d 331] (1964). Otherwise, however, the indigent on appeal is entitled to receive, at public expense, only the transcript relevant to the points of error assigned. See Farley v. United States, 354 U.S. 521 [77 S.Ct. 1371, 1 L.Ed.2d 1529] (1957); Ingram v. United States, [114 U.S.App.D.C. 283] 315 F.2d 29, 31 (D.C.Cir. 1962)."

Even with newly assigned counsel, *Hardy* did not require a transcript of the argument under the federal statute.

The defendant here has had a full and complete appellate review, and the judgment of the lower court is affirmed.

OLIVER, Judge (concurring).

I concur in the result reached in the opinion prepared by the Presiding Judge.

With respect to the element of premeditation, I am in complete agreement that under the evidence in this record the jury was fully warranted in finding that the defendant deliberately and premeditatedly murdered the deceased. As pointed out in the opinion, the Supreme Court of this State has held many times that the elements of premeditation and deliberation may be inferred from the circumstances of the killing. Edwards v. State, 221 Tenn. 60, 424 S.W.2d 783.

Concerning the weight and sufficiency of evidence to establish premeditation, and particularly with reference to the nature of the act causing death, many courts have held that deliberation and premeditation may be inferred from the manner in which the killing was committed; and that repeated shots, blows, and other acts of violence are sufficient evidence of premeditation. 3 Warren on Homicide, § 273a, pp. 167-168. Such matters as the atrocity, cruelty, and malignity, appearing in the circumstances under which the killing took place have been passed on frequently by the courts in considering the sufficiency of the evidence to sustain a conviction for first degree murder. 41 C.J.S. Homicide § 328, p. 71.

In this case the defendant deliberately shot the deceased in the head, mortally wounding him, callously shot him again in the back after he fell from his chair to the floor, and then fled the premises.

In State v. McNamara, 116 N.J.L. 497, 184 A. 797, cert. den. 299 U.S. 568, 57 S.Ct. 32, 81 L.Ed. 419, wherein the deceased was killed by multiple close-range

revolver shots, the Court held that the repeated firing of a revolver is sufficient to establish premeditation.

In State v. Page, Mo., 130 S.W.2d 520, the deceased was killed by a gunshot wound making a hole the size of a man's fist in the center of the top of his head and his brain fell out when the body was lifted. The Supreme Court of Missouri held that the manner of employment of a deadly weapon upon a vital part of the body is a circumstance from which deliberation may be made to appear.

In State v. Faust, 254 N.C. 101, 118 S.E.2d 769, 96 A.L.R.2d 1422, cert. den. 368 U.S. 851, 82 S.Ct. 85, 7 L.Ed.2d 49, the defendant took one officer's gun, while he was being held by members of an angry crowd, and shot and felled another officer and then walked around him and fired five more shots into his body at close range. Affirming a first degree murder conviction, the Court said that among the circumstances to be considered in determining whether a killing was with premeditation and deliberation is the dealing of lethal blows after the deceased has been felled and rendered helpless.

Dowell v. State, 191 Ark. 311, 86 S.W.2d 23, was a case involving the killing of three people; one was shot in the back of the head at close range, a child was also shot in the head, and the third deceased's head was crushed with a blunt instrument, and all the bodies were then thrown into a creek. The Arkansas Supreme Court held that the manner in which a killing is effected is a potent fact and circumstance tending to prove or disprove premeditation and deliberation, and that the mere fact that no motive for the crime was established, and

premeditation and deliberation were not made to affirmatively appear from the State's testimony, did not render the jury verdict speculative.

In People v. Furlong, 187 N.Y. 198, 79 N.E. 978, the deceased received twelve lacerated and ragged wounds on the front and top of the scalp, some of which extended through the scalp to the skull and included a compound comminuted fracture of the skull and lacerations of the brain, as well as facial injuries and a laceration of one finger. The Court held that deliberation and premeditation were shown by the nature and number of the wounds inflicted.

Breeding v. Maryland, 220 Md. 193, 151 A.2d 743, was a murder case wherein the deceased met her death through manual strangulation and a severe beating. The Court held that the triers of fact could properly draw the inference that the killing was premeditated and with malice aforethought.

In Commonwealth v. Bartolini, 299 Mass. 503, 13 N.E.2d 382, cert. den. 304 U.S. 565, 58 S.Ct. 950, 82 L.Ed. 1531, the deceased suffered various skull fractures from repeated head blows with a heavy instrument, the skull was split open, the cheek bone was fragmented and the upper jaw bone fractured, the orbit of one eye was fractured and the greater part of the eye was absent, and it appeared that the victim lived from ten to thirty minutes although unconscious, and the body was then dismembered. The Court held that upon this evidence the jury could find premeditation and malice aforethought and a conscious and fixed purpose to kill.

In my view the evidence in this record unquestionably

furnishes abundant support for the jury's verdict of first degree murder and it should be affirmed.

However, I am unable to concur with the Presiding Judge's statement responding to the defendant's Assignment of Error that he was denied his constitutional right to a full and complete appellate review by the official court reporter's failure to prepare a complete transcript of his trial. In the light of legislation enacted subsequent to promulgation of Rule 2 of the Rules of the Supreme Court regarding omission from the Bill of Exceptions of immaterial matters and arguments not seasonably challenged, a mere statement of the rule without any explanation or elucidation regarding its materiality or relevance in a particular case cannot but be insufficient and inappropriate.

Rules of court are never effective to abrogate or modify, and must yield to, a substantive rule of law. In Brewer v. State, 187 Tenn. 396, 215 S.W.2d 798, the Court stated the law upon this subject:

"* * * It is well nigh axiomatic that no rule of court is ever effective to abrogate or modify a substantive rule of law. In 14 Am.Jur. Sec. 152, p. 357 it is said, 'As against conflicting statutory provisions such rules are without force. They must be subordinate to the law, and in case of conflict the law will prevail.' Our own case of Adcox v. Southern Ry. Co., 182 Tenn. 6, 14, 184 S.W.2d 37, 156 A.L.R. 1091 supports the above text."

In 1965 the Legislature provided the Criminal Courts of this State with official court reporters in all criminal and habeas corpus cases, to be designated by the trial

judges having criminal jurisdiction and to be paid by the State. Acts 1965, Ch. 221; T.C.A. §§ 40-2029—40-2043. The following sections of Tennessee Code Annotated are pertinent here:

"40-2035. Duties of designated reporter—Party permitted private reporter—Use of transcript for appeal. —A designated reporter *shall attend every stage of each criminal case before the court and shall record verbatim, by a method prescribed or approved by the executive secretary, all proceedings had in open court and such other proceedings as the judge may direct.* The reporter shall attach his official certificate to the records so taken and promptly file them with the clerk of the court, who shall preserve them as a part of the records of the trial. A party at his own expense may retain a reporter other than the reporter provided under §§ 40-2029—40-2043 to record and transcribe the proceedings, and a transcript so prepared may be used for purpose of appeal, as provided by law." (Emphasis supplied.)

"40-2037. Certified transcripts—Requested by court for indigents—Requested and paid for by party—Appeal procedure unaffected.—Upon the direction of the court in the case of an indigent defendant, or at the request of any party who has agreed to pay the fee therefor, a *reporter designated by the court shall transcribe from the original record such parts of the proceedings as are requested,* attach his official certificate and deliver the transcript as requested. In any case the transcript certified by the reporter shall be deemed prima facie a correct statement of the testimony taken and the proceedings had; provided, however, that

nothing contained herein is intended to alter or amend the procedure for perfecting appeals as provided in chapter 1 of title 27 of this Code." (Emphasis supplied.)

"40-2040. Fees for transcripts—Rates—Furnished indigent defendants by state at court request—Payment in advance.—Each reporter may charge and collect fees for transcripts at rates prescribed by the executive secretary. If the defendant prays and is granted an appeal, and is determined by the trial judge to be without sufficient funds to pay for the preparation of the transcript of the proceedings, the trial judge shall direct the court reporter to furnish the defendant *a complete transcript of the proceedings,* the fee for which shall be paid by the state of Tennessee out of money appropriated for that purpose. The reporter may require any party requesting a transcript to pay the estimated fee in advance except as to transcripts which are to be paid for by the state of Tennessee." (Emphasis supplied.)

Manifestly, the clear and unmistakable intendment of the foregoing provisions of the statute is that the official court reporter employed and paid by the State is required to *record* "all proceedings had in open court and such other proceedings as the judge may direct." Otherwise, it would be an impossibility for the court reporter to furnish a defendant a *transcript* of "such parts of the proceedings as are requested" or "a complete transcript of the proceedings." Clearly, it is unarguable that the official court reporter's duty to *record* all the proceedings mandates the recording of the voir dire examination of jurors, the arguments of counsel, and the charge of the

court. Obviously, matters not *recorded* cannot be *transcribed,* and the defendant is deprived of a complete record of his trial, whether he be affluent or indigent, and may thereby be denied his constitutional right to an effective appellate review solely by lack of a record upon which to stand.

Evasion of the official court reporter's plain duties may forever foreclose all possibility of appellate review of fateful questions arising in the course of voir dire examination of jurors, particularly in view of the vital importance that may attach to that phase of the trial, the purpose of which is to secure a fair and impartial jury. Likewise, without a record of the arguments of prosecuting counsel the defendant's right to appellate review of improper argument may be cut off completely, however much the minds of the jurors may have been deliberately inflamed and prejudicially influenced thereby. The courts have taken notice of the essentiality of the official court reporter's duties and the imperative demands of the statute creating his office. Nelms v. State, 219 Tenn. 727, 413 S.W.2d 378; Elliott v. State, Tenn., 435 S.W.2d 812; Tucker v. Meadows, D.C., 234 F.Supp. 882; Schoonover v. State, Tenn.Cr.App., 448 S.W.2d 90; Isaac Bailey and Leonard Robinson v. State, Tenn.Crim. App., unpublished.

Indeed, it must be ordinary and common everyday knowledge in the legal profession that considered judgment with respect to whether prejudicial error has arisen in the course of a trial may be impossible for counsel, as well as the Court, without a transcript of the record. A partial or incomplete transcript, omitting crucial matters, cannot suffice. As an example, suppose the trial

judge routinely instructs the official court reporter not to record the voir dire examination of jurors, or the arguments of counsel. If a defendant is thus deprived of his constitutional right to a fair and impartial trial, what recourse does he have without any record of the unconstitutional invasion of his rights?

The ineludible consequence is that Rule 2 may not be regarded as an unqualified and unyielding dictate prohibiting the State's official court reporter from making a complete record of all trial proceedings, or allowing him to neglect to do so. Indeed, it is inconceivable that the Rule ever was considered subject to such an incredible construction, or that it or any other rule of court could authorize a trial judge to jeopardize or deny the constitutional rights of an accused on trial by instructing the official court reporter to abridge the record of trial or by adopting a rule of court having that effect. In any view of the matter, therefore, Rule 2 cannot have any conceivable bearing upon the statutory duties of the State's official court reporters.

Moreover, the case at bar is entirely different from the situation presented in *Schoonover* and *Bailey and Robinson,* supra, which this Court reversed and remanded for a new trial because the official court reporter prepared only a partial and incomplete trial transcript by omitting the arguments of prosecution counsel. The significant distinction is that in the present case no question regarding the arguments of prosecution counsel was raised in the defendant's motion for a new trial, and thus the matter of the prosecution arguments was not called to the attention of the trial court. This was done in *Schoon-*

*over* and in *Bailey and Robinson.* In this case the question is raised for the first time in Green's appeal.

Of course, an Assignment of Error not incorporated in the motion for a new trial will not be considered on appeal. Wilkerson v. State, 208 Tenn. 666, 348 S.W.2d 314; Kirby v. State, 214 Tenn. 296, 379 S.W.2d 780; Rule 14(4) and (5) of the Rules of the Supreme Court. And questions raised for the first time on appeal are generally not to be considered. Ezell v. State, 220 Tenn. 11, 413 S.W.2d 678; Lawler v. McCanless, 220 Tenn. 342, 417 S.W.2d 548. And errors to which no exceptions were taken in the trial court cannot be raised for the first time on appeal. Troxell v. State, 179 Tenn. 384, 166 S.W.2d 777; Blackwood v. State, 204 Tenn. 682, 325 S.W.2d 262; Kirby v. State, 214 Tenn. 296, 379 S.W.2d 780; Webb v. State, 173 Tenn. 518, 121 S.W.2d 550. Upon these authorities the question regarding the prosecution arguments which is raised for the first time in this Court may be disposed of properly and completely, and should be.

GALBREATH, Judge (dissenting).

I must dissent.

The facts of this homicide case and the law are correctly stated in the majority opinion but it is strongly felt that an erroneous conclusion has been reached.

Here we have a somewhat usual murder case, if murder can ever be said to be usual. In a tavern disagreement one angry man drew a deadly weapon and killed another. This is a serious crime, and is deserving of serious punishment in order to deter others from such

conduct, but it is not that most serious crime involving the taking of a human life, murder in the first degree.

From the facts of the case it would appear the jury, lower court and the majority here presumed premeditation or inferred it from proof that does not seem to this writer to suggest its existence at the time of the killing. Premeditation may not be presumed, it must be proved. True, the defendant killed the deceased with a deadly weapon following a quarrel. But, from these facts only murder in the second degree may be presumed.

"* * * from the mere fact of killing, the law presumes only murder in the second degree." Witt v. State, 46 Tenn. 5.

"Where the state proves the commission of a homicide, there arises a presumption of second degree murder. To reduce homicide from second degree murder there must be evidence of justification or mitigation. The burden is on the state to raise the offense to murder in the first degree. Admission of deliberate killing is sufficient so as to raise the offense, as is evidence of killing in an attempt at robbery, or to otherwise gain deceased's property. The offense is not raised by proof of killing with a deadly weapon. The burden of reducing the offense to manslaughter is on the defendant, but defendant sustains the burden by raising a reasonable doubt in the jury's mind whether defendant is guilty of second degree murder." Underhill's Criminal Evidence, 5th Ed. § 657.

What is the proof in the record that proves premeditation? There is none. On the contrary, there is undisputed proof from which it may plainly be inferred

that an instant before the shooting there was no plan in the mind of the defendant to kill the victim. Green walked up to the table at which the victim was seated and said simply, "Go home." It is submitted for logical consideration that these actions and words mitigate against a previously designed plan to kill. If the defendant had acceded to the imperious request to go home, nothing appears in the record to suggest that he would not be alive today. Of course, he had every right not to go home, and for the defendant to become angry enough to kill him for not obeying his dictatorial order he should be subjected to such punishment as the law provides for taking the life of another under such circumstances. He should not, in my judgment, be subjected to the same punishment reserved for the felon who carefully plans to insure his child's life and then kills it to collect money. Or the depraved killer who lies in wait to slay his victim from ambush. Or the bandit who kills his robbery victim to conceal his guilt of that crime. These are more serious matters than the rash, impulsive, stupid, impetuous act described in the record before us.

True, it is not necessary to prove premeditation existed for any definite period of time. But it is necessary to prove that it did exist. This is a relatively difficult matter to prove. It involves proving the mental state of the killer just prior to the act of killing. The fact that a killing is unexplainable from a reasonable consideration of the facts and circumstances, that it was pointless and useless, that the killer had nothing to gain from his act, that the killing was executed in a particularly bloody manner as in this case by shooting again and again do not constitute facts that tend to prove first degree

murder; on the contrary, the more irrational and pointless a killing is, the more likely is it to lack the planning and deliberation necessary to constitute premeditation. Juries, and I fear courts, are inclined to let natural prejudices against violence effect their judgment to such an extent that they view a murder in which the victim is left mutilated and butchered after a drunken brawl as a more serious crime than one involving the administration of a not too unpleasant tasting poison to a vexatious spouse in such a manner as to leave a good looking corpse, and a large insurance benefit.

Premeditation should not, as the majority herein seems to do, when their opinion holds that the design or intention to kill need not have pre-existed for any definite time, be treated as synonymous with intent. Intent, unlike premeditation, is also one of the elements of second degree murder and intent must be accompanied by a deliberate preconceived plan to kill in order to raise the degree to the highest level of murder.

"* * * premeditated design denotes pre-existing reflection and deliberation encompassing more than the mere intent to kill." State v. Keaton, 258 Minn. 359, 104 N.W.2d 650, 86 A.L.R.2d 649.

"There is no presumption of law that a homicide was committed with premeditation, even though malice is proved or presumed by law, but premeditation must be proved beyond a reasonable doubt, either by direct or circumstantial evidence." Underhill's Criminal Evidence, 5th Ed. § 643.

Murder in the second degree is all murder other than the precisely defined murder in the first degree. There

are only some nine ways in which murder in the first degree may be committed, one of them requiring premeditation. All other murders are of the lesser degree. The Supreme Court of Alabama in discussing the difficulty of proving the narrow elements necessary to establish murder in the first degree, other than those committed in connection with a defined felony, said:

"* * * the taking of life must been willful, deliberate, malicious, and premeditated. These must concur and co-exist or, whatever other offense may be committed, this offense of statutory creation is not committed. There is no possible state of facts from which the law presumes their concurrence and co-existence." Coats v. State, 253 Ala. 290, 45 So.2d 35.

Premeditation may, of course, be inferred from the acts and words of the killer. Nowhere in the record from the point the defendant shook hands with the deceased and told him to forget an argument they had concluded does anything at all appear to indicate the defendant's state of mind. If he had stood up and announced, "I am going over and kill Snow"; or if he had taken his pistol out and walked over to Snow's table in a threatening way, these facts would justify the jury in concluding a previously formulated design to kill had taken shape. Instead of such actions or words the circumstances prove without dispute that the defendant walked over and did something that completely dispels the notion that he planned to kill; he told the deceased to leave! Should we go further and infer that the defendant had planned to kill the deceased even if the victim had said, "yes, sir, I am going home," and had left? Just as in any other case

involving circumstantial evidence (and this case as far as proof of premeditation goes, rests completely on such proof) every reasonable hypothesis save that tending to prove guilt must be excluded by the jury before they can find the necessary element to have been proved beyond a reasonable doubt. The defendant did not indicate by word or deed that he had determined to kill the deceased if his order had been obeyed. It was his almost infantile, petulant reaction to the deceased's perfectly valid reaction to his demand that triggered the anger that resulted in this hot blooded, second degree murder.

Although I am in agreement with our Presiding Judge's opinion in this case in all other respects, I would recommend modification to second degree murder and a sentence of ten years in the penitentiary subject to acceptance by the State.