**William A. MEAZEL, Plaintiff in Error,**

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Jan. 29, 1973.

Certiorari Denied by Supreme Court
May 7, 1973.

**628**

Don C. Stansberry, Jr., and Ernest A. Petroff, III, Huntsville, for plaintiff in error.

David M. Pack, Atty. Gen., William B. Hubbard, Asst. Atty. Gen., Nashville, Arzo Carson; Dist. Atty. Gen., Huntsville, for defendant in error.

## OPINION

O'BRIEN, Judge.

Appeal from a conviction of first degree murder, judgment on the jury verdict and sentence of twenty years and one day confinement in the State Penitentiary.

One assignment of error is raised:

1. The trial court erred in failing to grant defendant's motion for a new trial, as the evidence preponderates against the verdict and in favor of the defendant's innocence of first degree murder.

Defendant shot his wife, at the home of her parents, with a bolt action, clip-fed, shotgun having a manual safety device, or lever. The defense was predicated on the theory that the shooting was accidental.

Defendant was his lone witness to the circumstances of the shooting. He testified that due to some domestic differences between him and his wife he had left the home of his father-in-law where they had been vacationing, and was staying with his son at a home owned by him and his wife, but occupied by a brother-in-law, down the road from the house of his wife's parents where she had remained. That on the day of the shooting his wife had called to report that his brother-in-law's pigs were loose and apparently requested help to put them up. This call resulted in his returning to the home of his wife's parents for the purpose of assisting in rounding up the pigs. The shotgun had been in the back of his station wagon. In an effort to frighten the pigs from a wooded area he took the gun out of the back of the car, took the clip out, and inserted one shell into the chamber, and walked out towards the thicket. It was determined the pigs had gone the other way and he started back toward the station wagon when his wife came from the house and they engaged in conversation beside the station wagon. Although they were discussing an imminent divorce, according to him there was no difficulty between them at that time. The conversation concluded and she started back toward the house. It was his intent to put the gun up. As his wife walked away he turned around to put some shells which he was holding in his hands in the backend of the station wagon, he turned around and just stepped out to turn the gun up to snap it, and it went off. He had no intention of firing the gun, or of shooting his wife. He thought the gun was unloaded.

Three witnesses to the shooting testified for the State. Tobiatha West, mother of the deceased, stated that she stepped out on the porch and when she first saw defendant and her daughter he had turned toward the station wagon and she was running toward the house, he reached into the back of the station wagon and got the gun, worked the lever on the top of it, then he just pointed it right straight at her. He shot her and she fell next to the porch. She had run not more than ten to twelve feet from the station wagon.

Kenny Allen Fryar, nine years of age, was present and observed defendant and his aunt talking to each other at the end of the station wagon. She started running toward the house. Defendant pulled out the gun from the back of the station wagon and shot her right in the back of the neck. He saw defendant pull up the bolt action on the shotgun and put it back, pushing it with both hands.

Neal Cross, age fourteen years, stated he saw the victim walking toward the house. He saw defendant reach in the station wagon, get out a shotgun, and shoot Mrs. West. He had seen defendant load the gun and replace it in the station wagon a

few minutes before he took it back out and shot. He stated, "He took it out, and then he—you might call it just semi-eyeing, but it was real quick, and then he just shot."

 There was other testimony in the record to the effect that there had been prior difficulty between the parties, and previous threats to kill or do grievous bodily harm to his wife. And testimony regarding defendant's conduct subsequent to the shooting, which was relevant; however, as we view the record there was sufficient evidence of premeditation in the conduct of defendant in removing the shotgun from the rear of the station wagon, working the safety lever or the bolt action, and aiming and shooting the victim while she was running from him in the direction of the house to warrant the verdict of the jury.

We cannot say that the existence of either premeditation or deliberation was not supported by some evidence in the present case. Both premeditation and deliberation may be inferred from the circumstances of a homicide. While willful killing with a deadly weapon is not a sufficient basis for an inference of premeditation and deliberation, the evidence in this case is not restricted to these bare facts, and the jury here had before them other circumstances from which they might infer the existence or the want of the mental elements of premeditation and deliberation. See Bass v. State, 191 Tenn. 259, 231 S.W.2d 707.

It is not necessary that the design or intention to kill should have been conceived or have pre-existed in the mind any definite time anterior to its execution. It is sufficient if it preceded the assault, however short the interval, and the length of time is not the essence of this constituent of the offense. The design may be conceived and deliberately formed in an instant. Hence it is not material that the interval of premeditation was brief. Clarke v. State, 218 Tenn. 259, 402 S.W.2d 863; Green v. State, 1 Tenn.Crim.App. 719, 450 S.W.2d 27.

We cannot, under the circumstances of this case, find that the evidence preponderates against the verdict, and the judgment of the trial court is affirmed.

WALKER, P. J., and DWYER, J., concur.